# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JOHN SOLAK, on behalf of himself and all other similarly situated stockholders of PAYLOCITY HOLDING CORPORATION, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 12299-CB |
| STEVEN I. SAROWITZ, MARK H. MISHLER, STEVEN R. BEAUCHAMP, RONALD V. WATERS III, ANDRES D. REINER, JEFFREY T. DIEHL, and PAYLOCITY HOLDING CORPORATION, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## OPINION

Date Submitted:  September 27, 2016
Date Decided:  December 27, 2016

Peter B. Andrews, Craig J. Springer, and David M. Sborz of ANDREWS & SPRINGER LLC, Wilmington, Delaware; *Attorneys for Plaintiff*.

John L. Reed, Ethan H. Townsend, and Harrison S. Carpenter of DLA PIPER LLP (US), Wilmington, Delaware; *Attorneys for Defendants*.

**BOUCHARD, C.**

In 2015, Section 115 was added to the Delaware General Corporation Law ("DGCL") codifying this Court's decision in *Boilermakers Local 154 Retirement Fund v. Chevron Corp.*[1] that Delaware corporations may adopt bylaws requiring that internal corporate claims be filed exclusively in Delaware. Section 109(b) of the DGCL was amended simultaneously to provide that the bylaws of Delaware corporations "may not contain any provision that would impose liability on a stockholder for the attorneys' fees or expenses of the corporation or any other party in connection with an internal corporate claim."

About six months later, the board of Paylocity Holding Corporation adopted two new bylaws. The first is an exclusive forum bylaw that, absent the company's consent, requires internal corporate claims to be filed in a state or federal court located in Delaware. The second bylaw is the point of controversy in this action. It purports to shift to a stockholder who files an internal corporate claim outside of Delaware without the company's consent the attorneys' fees and other expenses that the company incurs in connection with such a claim if the stockholder does not obtain a judgment on the merits that substantially achieves the full remedy sought (the "Fee-Shifting Bylaw"). In other words, to trigger the Fee-Shifting Bylaw, a stockholder must first violate the company's exclusive forum bylaw.

---

[1] 73 A.3d 934 (Del. Ch. 2013).

In this action, a stockholder of Paylocity seeks a declaration that the Fee-Shifting Bylaw is invalid under Sections 109(b) and 102(b)(6) of the DGCL, and asserts that the members of Paylocity's board should be liable for breaching their fiduciary duties by adopting the Fee-Shifting Bylaw and by failing to disclose certain information when the company publicly disclosed its adoption. Defendants have moved to dismiss the complaint as unripe because no stockholder has filed or stated an intention to file an internal corporate claim outside of Delaware, and for failure to state a claim for relief.

For the reasons that follow, I conclude that plaintiff's claims are ripe for review because the validity of the Fee-Shifting Bylaw otherwise may never be subject to judicial review given its deterrent effect. I further conclude that plaintiff's challenge under Section 109(b) states a claim for relief because that statute plainly prohibits "any" bylaw that purports to shift a corporation's litigation expenses to a stockholder in connection with the pursuit of an internal corporate claim without regard to where such a claim is filed. Plaintiff's remaining two claims will be dismissed because plaintiff has failed to demonstrate that the Fee-Shifting Bylaw necessarily violates Section 102(b)(6), which concerns when personal liability for the corporation's "debts" may be imposed on stockholders, and because he has failed to plead facts sufficient to warrant a reasonable inference that Paylocity's directors acted in bad faith.

## I. BACKGROUND

The facts in this opinion are drawn from the Verified Class Action Complaint (the "Complaint") and documents incorporated therein.[2]

### A. The Parties

Defendant Paylocity Holding Corporation, a Delaware corporation, is headquartered in Arlington Heights, Illinois. Paylocity is a cloud-based provider of payroll and human capital management software solutions for medium-sized organizations with between 20 and 1,000 employees. Its stock is publicly traded on NASDAQ.

Individual defendants Steven J. Sarowitz, Steven R. Beauchamp, Jeffrey T. Diehl, Mark H. Mischler, Andres D. Reiner, and Ronald V. Waters III were the six members of Paylocity's board of directors when the Fee-Shifting Bylaw was adopted. Sarowitz is the Chairman and founder of Paylocity. Plaintiff John Solak alleges he has been a Paylocity stockholder at all times relevant to the allegations in the Complaint.

---

[2] *See Winshall v. Viacom Int'l, Inc.*, 76 A.3d 808, 818 (Del. 2013) (internal quotations omitted) ("a plaintiff may not reference certain documents outside the complaint and at the same time prevent the court from considering those documents' actual terms" in connection with a motion to dismiss).

## B.    The Legislative Response to the *ATP* Decision

In May 2014, the Delaware Supreme Court held in *ATP Tour, Inc. v. Deutscher Tennis Bund* that "the board of a Delaware non-stock corporation may lawfully adopt a bylaw that shifts all litigation expenses to a plaintiff in intra-corporate litigation who does not obtain a judgment on the merits that substantially achieves, in substance and amount, the full remedy sought."[3]   Concern that this ruling would lead to the adoption of fee-shifting bylaws in stock corporations prompted a quick legislative response.

Within one year of the *ATP* decision, the Corporation Law Council of the Delaware State Bar Association proposed legislation to "limit *ATP* to its facts" and prevent the boards of Delaware stock corporations from adopting fee-shifting bylaws.[4]  In an explanatory memo, the Council expressed concern that such bylaws would deter stockholders from enforcing otherwise meritorious claims.[5]   The Council further commented that "[p]ermitting fee shifting as a limitation on stockholder litigation would be functionally equivalent to permitting corporate

---

[3] 91 A.3d 554, 557 (Del. 2014).

[4] Explanation of Council Legislative Proposal at 12 (hereafter "Council Memo") (Transmittal Aff. of Ethan H. Townsend Ex. B).

[5] *Id.* at 3-4.

charter or bylaw provisions limiting or eliminating the fiduciary duties of officers and directors," which the Council had "steadfastly declined to permit," and that Delaware courts "already have sufficient tools to deter litigation of limited merit" without the need for fee shifting bylaws.[6]

The legislation the Council proposed was signed into law on June 24, 2015, and became effective on August 1, 2015.[7] It amended the DGCL in two ways pertinent to this case. First, it added Section 115 codifying this Court's decision in *Boilermakers* to provide that the certificate of incorporation or the bylaws of a Delaware corporation "may require, consistent with applicable jurisdictional requirements, that any or all internal corporate claims shall be brought solely and exclusively in any or all of the courts in this State."[8] Section 115 defines "internal corporate claims" to mean "claims, including claims in the right of the corporation, (i) that are based upon a violation of a duty by a current or former director or officer or stockholder in such capacity, or (ii) as to which this title confers jurisdiction upon the Court of Chancery."[9] Second, in response to *ATP*, the legislation amended

---

[6] *Id.* at 6, 7-8, 12**.**

[7] Compl. ¶ 18.

[8] 8 *Del. C.* § 115.

[9] *Id.*

Section 109(b) to provide that "bylaws may not contain any provision that would impose liability on a stockholder for the attorneys' fees or expenses of the corporation or any other party in connection with an internal corporate claim, as defined in § 115 of this title."[10]

## C.     Paylocity Adopts the Fee-Shifting Bylaw

On February 2, 2016, about six months after the amendments to the DGCL enacted in the wake of *ATP* became effective, the Paylocity board amended its bylaws to add a new Article VIII.[11]  It contains two provisions.

Section 8.1 is an exclusive-forum provision.  It provides that, unless the company otherwise consents, courts located in Delaware shall be "the sole and exclusive forum for" certain specified disputes:

> Unless the corporation consents in writing to the selection of an alternative forum, the sole and exclusive forum for (i) any derivative action or proceeding brought on behalf of the corporation, (ii) any action asserting a claim of breach of a fiduciary duty owed by any current or former director, officer or other employee of the corporation to the corporation or the corporation's stockholders, (iii) any action asserting a claim arising pursuant to any provision of the Delaware General Corporation Law, or (iv) any action asserting a claim governed by the internal affairs doctrine (each an "Action") shall be a state or federal court located within the state of Delaware (a "Chosen Court"),

---

[10] 8 *Del. C.* § 109(b).

[11] *See* Compl. ¶ 24.

6

in all cases subject to the court's having personal jurisdiction over the indispensable parties named as defendants.[12]

Section 8.2 is a fee-shifting provision. In general terms, it shifts the company's litigation expenses (including attorneys' fees) to any stockholder who brings, substantially assists, or has a direct financial interest in any "Action" in a forum not located in Delaware, unless the stockholder obtains a judgment on the merits that substantially achieves the full remedy sought:

> 8.2 <u>Extra-Forum Claims</u>. To the fullest extent permitted by law, in the event that (A) any current or former stockholder of the corporation acting as such ("Claiming Party") initiates, joins or asserts any Action in a court, tribunal or other arbitral or judicial body, in each case other than in a Chosen Court (an "Extra-Forum Claim"), or offers substantial assistance to, or has a direct financial interest in (other than simply in such person's capacity as a stockholder of the corporation), any Extra-Forum Claim against the corporation and/or any current or former director, officer, employee or agent of the corporation (collectively, an "Aligned Party"), (B) the corporation does not consent in writing to waive applicability of this bylaw to a specified Extra-Forum Claim and (C) the Claiming Party (or the third party that received substantial assistance from the Claiming Party or in whose Extra-Forum Claim the Claiming Party had a direct financial interest) does not obtain a judgment on the merits that substantially achieves, in substance and amount, the full remedy sought, then each Claiming Party shall be obligated jointly and severally to reimburse the corporation and any such Aligned Party the greatest amount permitted by law of all fees, costs and expenses of every kind and description (including but not limited to, all reasonable attorneys' fees and other litigation expenses)

---

[12] Amendment to Amended and Restated Bylaws of Paylocity Holding Corporation (hereafter "Amendment to Paylocity Bylaws") (Townsend Aff. Ex. A).

that the parties may incur in connection with such Extra-Forum Claim.[13] (As defined above, the "Fee-Shifting Bylaw").

Defendant acknowledges that the term "Action" as defined in Section 8.1 is substantively the same as the term "internal corporate claim" as defined in Section 115 of the DGCL.[14] Thus those terms are used interchangeably in this opinion.

On February 5, 2016, Paylocity filed a Form 8-K with the Securities and Exchange Commission disclosing the adoption of Article VIII and attaching a copy of it.[15] The 8-K did not mention Section 102(b)(6) of the DGCL or the recently enacted amendment to Section 109(b) of the DGCL.

## D.    The Present Action

On May 5, 2016, plaintiff filed this action on behalf of a putative class of Paylocity stockholders. The Complaint contains three claims. In Count I, plaintiff asserts that the Fee-Shifting Bylaw violates the prohibition against fee-shifting bylaws in Section 109(b) of the DGCL. In Count II, plaintiff asserts that the Fee-Shifting Bylaw violates Section 102(b)(6) of the DGCL, which provides that, absent express approval in the certificate of incorporation, stockholders "shall not be personally liable for the payment of the corporation's debts except as they may be

---

[13] *Id.*

[14] *See* Tr. at 18-20 (Sept. 27, 2016).

[15] Form 8-K (Transmittal Affidavit of Craig J. Springer Ex. D).

liable by reason of their own conduct or acts." In Count III, plaintiff asserts that the board of directors breached their fiduciary duties by adopting the Fee-Shifting Bylaw and by failing to disclose certain information when the company publicly disclosed its adoption.

## II. ANALYSIS

Defendants have moved to dismiss the Complaint under Court of Chancery Rule 12(b)(1) for lack of subject matter jurisdiction on the theory that plaintiff's claims are not ripe for review, and under Court of Chancery Rule 12(b)(6) for failure to state a claim upon which relief can be granted. I address these arguments in turn.

### A. Plaintiff's Facial Challenge to the Fee-Shifting Bylaw is Ripe

In Counts I and II of the Complaint, plaintiff asserts that the Fee-Shifting Bylaw is facially invalid under Sections 109(b) and 102(b)(6) of the DGCL. Plaintiff does not assert an "as applied" challenge to the Fee-Shifting Bylaw.

Section 111(a)(1) of the DGCL confers jurisdiction on the Court to "determine the validity of the provisions of . . . the bylaws of a corporation." Under 10 *Del. C.* § 6501, this Court may issue a declaratory judgment to determine the validity of a bylaw, provided that there is an "actual controversy" between the parties. For an actual controversy to exist, the issue in dispute must be ripe for determination.[16]

---

[16] *Stroud v. Milliken Enters., Inc.*, 552 A.2d 476, 479-80 (Del. 1989).

9

"Ripeness, the simple question of whether a suit has been brought at the correct time, goes to the very heart of whether a court has subject matter jurisdiction."[17] The ripeness doctrine prevents Delaware courts from exercising jurisdiction over disputes where doing so would result in the rendering of an advisory or hypothetical opinion:

> Courts decline to render hypothetical opinions, that is, dependent on supposition, for two basic reasons. "First, judicial resources are limited and must not be squandered on disagreements that have no significant current impact and may never ripen into legal action [appropriate for judicial resolution]. Second, to the extent that the judicial branch contributes to law creation in our legal system, it legitimately does so interstitially and because it is required to do so by reason of specific facts that necessitate a judicial judgment." Whenever a court examines a matter where facts are not fully developed, it runs the risk not only of granting an incorrect judgment, but also of taking an inappropriate or premature step in the development of the law.[18]

As our Supreme Court recently explained, a "common sense assessment" must be made in determining whether a case is ripe for adjudication:

> A ripeness determination requires a common sense assessment of whether the interests of the party seeking immediate relief outweigh the concerns of the court "in postponing review until the question arises in some more concrete and final form." Generally, a dispute will be deemed ripe if "litigation sooner or later appears to be unavoidable and where the material facts are static." Conversely, a dispute will be deemed not ripe where the claim is based on "uncertain and contingent

---

[17] *Bebchuk v. CA, Inc.*, 902 A.2d 737, 740 (Del. Ch. 2006).

[18] *Stroud*, 552 A.2d at 480 (quoting *Schick Inc. v. Amalgamated Clothing and Textile Workers Union*, 533 A.2d 1235, 1239 (Del. Ch. 1987) (Allen, C.)).

events" that may not occur, or where "future events may obviate the need" for judicial intervention.[19]

Applying these principles, this Court has commented that "[f]acial challenges to the legality of provisions in corporate instruments are regularly resolved by this Court."[20]

Despite the facial nature of plaintiff's challenge to the validity of the Fee-Shifting Bylaw, defendants contend that plaintiff's claims are not ripe because no stockholder of Paylocity has filed an action outside of Delaware that would trigger the Fee-Shifting Bylaw, and because plaintiff has not pled an intention to bring such an action. Although the factual premise of defendants' position is correct, I disagree that it negates the ripeness of the current dispute.

---

[19] *XI Specialty Ins. Co. v. WMI Liquidating Trust*, 93 A.3d 1208, 1217-18 (Del. 2014) (citations omitted); *see also Rollins Int'l, Inc. v. Int'l Hydronics Corp.*, 303 A.2d 660, 662 (Del. 1973) (citations omitted) ("While it is true that courts will not entertain suits seeking an advisory opinion or an adjudication of hypothetical questions, the courts do entertain declaratory judgment actions where the alleged facts are such that a true dispute exists and eventual litigation appears to be unavoidable.").

[20] *Lions Gate Entm't Corp. v. Image Entm't Inc.*, 2006 WL 1668051, at *6 (Del. Ch. June 5, 2006); *see also Boilermakers,* 73 A.3d at 945 (facial challenge to pair of forum-selection bylaws "ripe for adjudication now" because "plaintiffs' lawsuits were chilling the adoption of such bylaws") (Strine, C.); *Moran v. Household Int'l, Inc.*, 490 A.2d 1059, 1072 (Del. Ch. 1985) (validity of stockholder rights plan ripe because plaintiff's action contests the plan's "present depressing effect . . . regardless of whether the rights are in fact ever triggered").

This Court repeatedly has recognized disputes to be ripe for review when stockholders challenge measures that have a substantial deterrent effect.[21]  Here, the practical reality is that, so long as the Fee-Shifting Bylaw remains in place, it is highly unlikely that any rational stockholder of Paylocity would file an internal corporate claim outside of Delaware because of the significant risk of personal liability that triggering the Fee-Shifting Bylaw presents.  As the Corporate Law Council observed in advocating for the adoption of the amendment to Section 109(b) to bar such fee-shifting bylaws, "few stockholders will rationally be able to accept the risk of exposure to millions of dollars in attorneys' fees to attempt to rectify a perceived corporate wrong, no matter how egregious."[22]  To decline to review the

---

[21] *See In Re Allergan*, 2014 WL 5791350, at *8 (Del. Ch. Nov. 7, 2014) (collecting authorities); *see also Moran*, 490 A.2d at 1072 (validity of a stockholder rights plan ripe for review, reasoning that "the plaintiffs here are seeking a declaration that the Rights Plan, because of its deterrent features, presently affects shareholders' fundamental rights and is illegal under Delaware law."); *KLM Royal Dutch Airlines v. Checchi*, 698 A.2d 380, 384 (Del. Ch. 1997) (disputed stockholder rights plan ripe for review because "poison pill presently interferes with [the stockholder's] contractual rights to exercise the option in the future"); *Carmody v. Toll Brothers, Inc.*, 723 A.2d 1180, 1188 (Del. Ch. 1998) (validity of dead hand provision in stockholder rights plan ripe because its "*present* depressing and deterrent effect upon the shareholders' interests" constitutes an "alleged *current* adverse impact"); *Leonard Loventhal Account v. Hilton Hotels Corp.*, 2000 WL 1528909, at *2-3, 10-11 (Del. Ch. Oct. 10, 2000) (statutory validity of stockholder rights plan ripe for review); *Pontiac General Employees Retirement System v. Ballantine*, C.A. No. 9789–VCL, at *72–77 (Del. Ch. Oct. 14, 2014) (TRANSCRIPT) (proxy put ripe for challenge because of its "deterrent effect" on running a proxy contest).

[22] Council Memo at 4; *see also Struogo Hollander*, 111 A.3d 590, 595 & n.19 (Del. Ch. 2015) ("no rational stockholder—and no rational plaintiff's lawyer—would risk having to pay the Defendants' uncapped attorneys' fees to vindicate the rights of the Company's

Fee-Shifting Bylaw thus would mean, as a practical matter, that its validity under the DGCL would never be subject to judicial review.

Declining review of the Fee-Shifting Bylaw also could encourage other corporate boards to adopt similar bylaws to take advantage of their potent deterrent effect on stockholders without regard to whether such provisions are legally permissible. Thus, deciding "the basic legal questions presented" by the plaintiff's complaint "will provide efficiency benefits to not only the defendants and their stockholders, but to other corporations and their investors."[23] "Corporate fiduciaries must be given clear notice of what conduct is and is not allowed."[24] Given the very real possibility that the Fee-Shifting Bylaw would never be subjected to judicial review if it were necessary to wait for it to be triggered, and because no beneficial purpose is served by perpetuating uncertainty concerning the permissibility of fee-shifting bylaws, particularly in the wake of the recent amendments to the DGCL, my common sense assessment is that plaintiff's claims should be reviewed now.

---

minority stockholders."); *Kastis v. Carter*, 2014 WL 6684596 (Del. Ch. July 21, 2014) (stockholder confronted with a non-reciprocal fee-shifting bylaw moved to invalidate the bylaw or, alternatively, to permit plaintiff's counsel to withdraw and to dismiss the action).

[23] *Boilermakers*, 73 A.3d at 938.

[24] *Loventhal*, 2000 WL 1528909, at *11 (statutory validity of stockholder rights plan ripe for review).

The primary authority on which defendants rely to challenge ripeness, Chancellor Chandler's decision in *Wayne County Employees' Retirement System v. Corti*,[25] is distinguishable. *Corti* involved a challenge to two provisions in the certificate of incorporation of Activision Blizzard. The plaintiff in *Corti*, unlike the plaintiff here, did "not allege any present negative or detrimental effect on shareholders that warrants granting declaratory relief."[26] The Chancellor instead found that the plaintiff in *Corti* was "merely . . . able to conjure up hypothetical situations in which the challenged provisions *may* be applied contrary to Delaware law."[27] By contrast, plaintiff here challenges the facial validity of the Fee-Shifting Bylaw based on the plain text of two provisions of the DGCL.

To be clear, I do not intend to suggest that a stockholder who files an internal corporate claim outside of Delaware in blatant violation of a plainly-valid forum-selection bylaw would suffer a detriment from being compelled to litigate in the mandated forum, nor should such behavior be condoned. To the contrary, stockholders are expected to play by the rules of the company in which they chose to invest. The stockholders of Paylocity nonetheless would suffer a detriment in my

---

[25] 2009 WL 2219260 (Del. Ch. July 24, 2009).

[26] *Id.* at *19.

[27] *Id.*

view if the validity of the Fee-Shifting Bylaw were never subject to judicial review because the actions taken by their fiduciaries then would be left unchecked.[28]  For the reasons stated above, the dispute before the Court is ripe for review.[29]

## B.     Defendants' Motion to Dismiss under Rule 12(b)(6)

### 1.     Standard of Review

Having determined that plaintiff's claims are ripe for review, the next question is whether he has stated claims upon which relief can be granted.  Ordinarily, there would be no disagreement over the standard that governs a motion to dismiss brought under Rule 12(b)(6), which, as our Supreme Court held in *Central Mortgage*, requires denial of "the motion unless the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof."[30]  That analysis is not so straightforward, however, when one challenges the facial validity of a corporate bylaw.  That is because, as our Supreme Court held in *Frantz*

---

[28] *See CA, Inc. v. AFSCME Emps. Pension Plan*, 953 A.2d 227, 240 (Del. 2008) ("[W]e express no view on whether the Bylaw as currently drafted, would create a better governance scheme from a policy standpoint.  We decide only what is, and is not, legally permitted under the DGCL.").

[29] Defendants also argue that the present dispute is not ripe given the presence of a "savings clause" restricting the application of the Fee-Shifting Bylaw "[t]o the fullest extent permitted by law."  I address the effect of the savings clause below in considering the merits of plaintiff's claims.

[30] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 536 (Del. 2011).

*Manufacturing*, "[t]he bylaws of a corporation are presumed to be valid, and the courts will construe the bylaws in a manner consistent with the law rather than strike down the bylaws."[31]

Relying on *Central Mortgage* and the Delaware Supreme Court's decision in *VLIW Technology*, plaintiff argues that a motion to dismiss a challenge to the facial validity of a corporation's bylaw "should be denied unless 'defendants' interpretation is the only reasonable construction as a matter of law.'"[32] Put differently, plaintiff seeks to place the burden on defendants to demonstrate that the Fee-Shifting Bylaw is unambiguous and plainly lawful, thereby negating plaintiff's construction. Plaintiff's reliance on *VLIW Technology* is misplaced. That case involved a claim for breach of contract, which will survive dismissal under Rule 12(b)(6) where a contractual provision is ambiguous and plaintiff has advanced at least one reasonable interpretation of the provision.[33] *VLIW Technology* did not involve a challenge to the facial validity of a bylaw, which implicates the principle of presumed validity articulated in *Frantz Manufacturing*.

---

[31] *Frantz Mfg. Co. v. EAC Indus.*, 501 A.2d 401, 407 (Del. 1985).

[32] Pl.'s Ans. Br. 20 (quoting *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 614 (Del. 2003)).

[33] *See VLIW Tech.,* 840 A.2d at 615.

Relying on *Frantz Manufacturing* and analogous principles applicable to facial challenges to a statute, Chief Justice Strine, writing as the Chancellor, held in *Boilermakers* that "a plaintiff challenging the facial validity of bylaws must 'show that the bylaws cannot operate lawfully or equitably *under any circumstances*.'"[34] The Chief Justice further explained that a plaintiff "voluntarily assume[s] this burden by making a facial validity challenge, and cannot satisfy it by pointing to some future hypothetical application of the bylaws that might be impermissible."[35]

Although *Boilermakers* involved a motion for judgment on the pleadings under Rule 12(c), and not a motion to dismiss under Rule 12(b)(6), plaintiff has advanced no principled reason why that should make a difference, and none is readily apparent. To the contrary, given that a facial challenge presents a pure question of law,[36] it makes sense that one who has voluntarily chosen to mount a facial attack on the validity of a bylaw must demonstrate that it cannot operate

---

[34] *Boilermakers*, 73 A.3d at 948 & n.55.

[35] *Id.* at 949.

[36] *See, e.g.*, *Weinberger v. UOP, Inc.*, 409 A.2d 1262, 1264 (Del. Ch. 1979) ("pleaded conclusions of law" not entitled to deference on motion to dismiss absent support from specific alleged facts).

17

lawfully under any circumstance to state a claim for relief if the presumption of facial validity articulated in *Frantz Manufacturing* applies as the starting point.[37]

For these reasons, I will apply the standard of review articulated in *Boilermakers* in resolving defendants' motion to dismiss plaintiff's claims challenging the facial validity of the Fee-Shifting Bylaw (Counts I and II). For plaintiff's breach of fiduciary duty claim (Count III), I will apply the traditional standard of reasonable conceivability.

### 2. Count I States a Claim that the Fee-Shifting Bylaw is Facially Invalid under DGCL Section 109(b)

In Count I of the Complaint, plaintiff seeks a declaration that the Fee-Shifting Bylaw is invalid because it violates Section 109(b) of the DGCL. The Fee-Shifting Bylaw provides, in relevant part, that "[t]o the fullest extent permitted by law," any stockholder who files an "Action" outside of Delaware and who fails to "obtain a judgment on the merits that substantially achieves … the full remedy sought," shall be obligated to reimburse Paylocity for the attorneys' fees and other expenses it

---

[37] Plaintiff cites *Kirby v. Kirby*, 1987 WL 14862 (Del. Ch. July 29, 1987), which pre-dated *Boilermakers*, as support for a different standard of review. In that case, plaintiffs sought a determination that their purported removal as directors of a family charitable corporation was improper, which implicated the question whether an amendment to the corporation's bylaws was invalid because of a conflict with its certificate of incorporation. The Court denied defendants' motion to dismiss after finding the certificate of incorporation to be ambiguous. Critical to this case, the *Kirby* Court did not consider the presumption of facial validity articulated in *Frantz Manufacturing* that was central to the reasoning in *Boilermakers* for the standard of review it articulated.

incurred in connection with such action.[38]  As recently amended, Section 109(b) of the DGCL provides that "bylaws may not contain any provision that would impose liability on a stockholder for the attorneys' fees or expenses of the corporation or any other party in connection with an internal corporate claim, as defined in § 115 of this title."  As noted previously, it is undisputed that the term "Action" as used in the Fee-Shifting Bylaw is substantively the same as the term "internal corporate claim" used in Section 109(b).  Thus, the Fee-Shifting Bylaw and Section 109(b) both cover the same types of claims.[39]

Our Supreme Court recently summarized the interpretative principles to be applied in construing a corporate bylaw as follows:

> The bylaws of a Delaware corporation constitute part of a binding broader contract among the directors, officers and stockholders formed within the statutory framework of the Delaware General Corporation Law.  Because corporate charters and bylaws are contracts, our rules of contract interpretation apply.
>
> "Words and phrases used in a bylaw are to be given their commonly accepted meaning unless the context clearly requires a different one or unless legal phrases having a special meaning are used."  "Under the applicable interpretation rules, if the bylaw's language is unambiguous, the court need not interpret it or search for the parties' intent."  In that case, "[t]he bylaw is construed as it is written, and the language, if simple and unambiguous, is given the force

---

[38] Amendment to Paylocity Bylaws.

[39] *See* Tr. at 18-20.

and effect required." If charter or bylaw provisions are unclear, we resolve any doubt in favor of the stockholder's electoral rights.[40]

The Supreme Court similarly has explained that "[a] court should not resort to legislative history in interpreting a statute where statutory language provides unambiguously an answer to the question at hand."[41]

Applying these principles here, I agree with plaintiff that the plain text of the Fee-Shifting Bylaw violates Section 109(b) because the statute unambiguously prohibits the inclusion of "***any provision***" in a corporation's bylaws that would shift to a stockholder the attorneys' fees or expenses incurred by the corporation "***in connection with an internal corporate claim***," irrespective of where such a claim is filed. Thus, even though the Fee-Shifting Bylaw is triggered only when an internal corporate claim has been filed outside of Delaware,[42] it is invalid under the blanket prohibition on such bylaws contained in Section 109(b).

---

[40] *Hill Int'l, Inc. v. Opportunity P'rs L.P.*, 119 A.3d 30, 38 (Del. 2015) (citations omitted).

[41] *Arnold v. Soc'y for Sav. Bancorp, Inc.*, 650 A.2d 1270, 1287 (Del. 1994).

[42] As plaintiff points out, the Fee-Shifting Bylaw not only purports to shift fees to the stockholder who files an internal corporate claim outside of Delaware, but also to a stockholder who "offers substantial assistance to" or "has a direct financial interest in" the assertion of such a claim. Nonetheless, the filing of an internal corporate claim by a stockholder outside of Delaware is essential to trigger application of the Fee-Shifting Bylaw.

Defendants advance three arguments in defense of the Fee-Shifting Bylaw's validity, but none has merit. First, defendants argue that the recent amendment to Section 109(b) and the simultaneous adoption of Section 115 "must be read in tandem" to mean that Section 109(b) was not intended to prohibit fee-shifting for internal corporate claims filed outside of Delaware when a corporation adopts an exclusive forum bylaw requiring that such claims be filed in Delaware, as Section 115 allows.[43] The fatal flaw in this argument is that Section 109(b) makes no distinction between internal corporate claims filed inside or outside of Delaware. To the contrary, Section 109(b) plainly prohibits "*any* provision" that would shift fees "in connection with an internal corporate claim" without regard to where such a claim is filed.

The amendment to Section 109(b) and the enactment of Section 115 may have occurred together, but nothing in the plain text of those provisions indicates that the legislature intended to create an exception to the prohibition on fee-shifting bylaws for internal corporate claims in Section 109(b) for actions filed in violation of a forum selection provision compliant with Section 115. The General Assembly presumably could have written Section 109(b) to include such an exception as a

---

[43] Defs.' Op. Br. 27-31.

deterrent to stockholders who otherwise may be willing to defy the corporation's governance structure, but it did not do so.

Second, defendants argue that fee-shifting is permissible at common law and that Section 109(b) of the DGCL was not intended to displace the common law. In support of this argument, defendants rely primarily on *El Paso Natural Gas Co. v. TransAmerican Natural Gas Corp.*, where our Supreme Court implied that the costs of litigation may be awarded as damages for breach of a forum selection clause.[44] *El Paso* is distinguishable because the fee-shifting provision in that case was the subject of a private contract, to which the prohibition on fee-shifting *bylaws* in Section 109(b) does not apply. Indeed, the legislative synopsis expressly states that the amendment to Section 109(b) was not intended "to prevent the application of any provision in a stockholders agreement or other writing signed by the stockholder against whom the provision is to be enforced."[45]

The common law relevant here emanates from the Supreme Court's opinion in *ATP* that the board of a Delaware non-stock corporation may lawfully adopt a fee-

---

[44] 669 A.2d 36, 40 (Del. 1995); *see also Cornerstone Brands, Inc. v. O'Steen*, 2006 WL 2788414, at *4 (Del. Ch. Sept. 20, 2006) (applying *El Paso* to deny a motion to dismiss a claim for damages for breach of a forum selection clause in a merger agreement).

[45] Del. S.B. 75, 140th Gen. Assem. (2015) (synopsis).

shifting bylaw.[46]  Although no decision has addressed directly whether this holding would apply to stock corporations, it was "widely suggested" after *ATP* "that stock corporations . . . consider adopting such provisions."[47]  In *A.W. Financial Services*, our Supreme Court articulated three ways a statute could oust the common law, including where "the statutory scheme actually conflict[s] with the common law."[48]  The Supreme Court more generally explained that repeal of the common law by implication "is deemed to occur only 'where there is fair repugnance between the common law and the statute, and both cannot be carried into effect.'"[49]  To the extent one may have inferred from *ATP* that fee-shifting bylaws were permissible for stock corporations,[50] the recent amendment to Section 109(b) would be in direct conflict with that inference, and there unquestionably would be a "fair repugnance" between that amendment and the common law.  Thus, defendants' second line of argument fails.

---

[46] *See ATP*, 91 A.3d at 557.

[47] Council Memo at 2.

[48] *A.W. Fin. Servs., S.A. v. Empire Res., Inc.*, 981 A.2d 1114, 1123 (Del. 2009).

[49] *Id.* at 1122 (quoting 15A C.J.S. *Common Law* § 16).

[50] If, on the other hand, it was not reasonably inferable from *ATP* that fee-shifting bylaws were permissible for stock corporations, there would be no relevant common law for Section 109(b) to displace, and defendants' second argument would fail for lack of a valid premise.

Finally, defendants assert that Count I fails to state a claim for relief because the Fee-Shifting Bylaw contains a savings clause that makes it "enforceable only '[t]o the fullest extent permitted by law,'" and thus it "carves out all interpretations inconsistent with Delaware law."[51] The problem with this argument is that the Fee-Shifting Bylaw is wholly invalid, as explained above, because Section 109(b) prohibits *any* provision that would shift fees to a stockholder in connection with internal corporate claims without regard to where such a claim is filed. For a savings clause to negate a facial challenge to the validity of a bylaw, there logically must be something left in the challenged provision for the savings clause to save. Here, there is not.[52]

For the reasons explained above, plaintiff has demonstrated that the Fee-Shifting Bylaw cannot operate lawfully under any circumstances given the blanket

_____

[51] Defs.' Op. Br. 34.

[52] The cases involving savings clauses on which defendants rely are distinguishable because in those cases, unlike here, the savings clauses ostensibly had a potential role to play in salvaging parts of the provisions at issue. In *Corti*, for example, plaintiff contended that a charter provision exculpating some parties from liability for certain actions that "breach any fiduciary duty" was *ultra vires* only to the extent that it eliminated the duty of loyalty, but plaintiff did not dispute the waiver's validity as to other duties. 2009 WL 2219260, at *18. Similarly, in *City of Providence v. First Citizens BancShares, Inc.*, 99 A.3d 229 (Del. Ch. 2014), plaintiff asserted that a bylaw selecting North Carolina as the exclusive forum was invalid because it purportedly denied the Court of Chancery the "exclusive jurisdiction" granted to it by the legislature over certain provisions of the DGCL. There, the savings clause "carve[d] out from the ambit of the Forum Selection Bylaw a claim for relief, if any, that may be asserted only in the Court of Chancery." *Id.* at 236.

prohibition on fee-shifting bylaws in Section 109(b), and thus plaintiff has stated a claim for relief that the Fee-Shifting Bylaw is facially invalid.

### 3. Count II Fails to State a Claim that the Fee-Shifting Bylaw is Facially Invalid under DGCL Section 102(b)(6)

In Count II of the Complaint, plaintiff seeks a declaration that the Fee-Shifting Bylaw is invalid because it violates Section 102(b)(6) of the DGCL. Section 102(b)(6) authorizes a corporation to include in its certificate of incorporation "[a] provision imposing personal liability for the debts of the corporation on its stockholders to a specified extent and upon specified conditions," and further states that "otherwise, the stockholders of a corporation shall not be personally liable for the payment of the corporation's debts except as they may be liable by reason of their own conduct or acts." Plaintiff asserts that, because Paylocity's certificate of incorporation "does not contain any provision imposing on its stockholders personal liability for the debts of the corporation," the Fee-Shifting Bylaw cannot lawfully require a stockholder to pay the company's litigation expenses.[53]

If triggered, the Fee-Shifting Bylaw would require a stockholder to reimburse Paylocity "all fees, costs and expenses of every kind and description (including but not limited to, all reasonable attorneys' fees and other litigation expenses)" it incurred in connection with litigating an internal corporate claim. Thus, the

---

[53] Compl. ¶ 46.

25

threshold question to determining if the Fee-Shifting Bylaw violates Section 102(b)(6) is whether these type of expenses fall within the meaning of the term "debts" as used in Section 102(b)(6).  Even if they do, another question implicated by plaintiff's motion is whether fee-shifting under the Fee-Shifting Bylaw would satisfy the exception to the prohibition against personal liability for the corporation's debts when stockholders are "liable by reason of their own conduct or acts."[54]

The standard of review applicable to this motion is decisive to its resolution with respect to Count II.  As explained above, having chosen to challenge the facial validity of the Fee-Shifting Bylaw, plaintiff carries the "heavy" burden of showing that Section 102(b)(6) renders the Fee-Shifting Bylaw invalid under "any circumstances."[55]  Plaintiff has failed to meet that burden.

To start, plaintiff has provided no authority interpreting the term "debts" as used in Section 102(b)(6) or even offered any analysis of the general meaning of the term to support the conclusion, which plaintiff simply assumes to be true, that the term "debts" encompasses litigation expenses as a matter of plain English.  Nor has plaintiff provided any coherent explanation why the exception at the end of Section 102(b)(6) would not apply in any event.

---

[54] 8 *Del. C.* § 102(b)(6).

[55] *Boilermakers*, 73 A.3d at 948.

To my mind, unguided by having the benefit of any relevant authority to consider, it is plausible that the term "debts" as used in Section 102(b)(6) could encompass the type of expenses enumerated in the Fee-Shifting Bylaw, but that conclusion is not self-evident or free from doubt. It also seems plausible the term may have been intended to cover a narrower range of liabilities. Nor is it at all clear that the exception in 102(b)(6) would not apply in any event given that a stockholder's "own conduct or acts" in filing an internal corporate claim outside of Delaware is the trigger to liability under the Fee-Shifting Bylaw. In short, plaintiff has failed to meet his burden to demonstrate that Section 102(b)(6) renders the Fee-Shifting Bylaw invalid under "any circumstances," and thus Count II will be dismissed for failure to sate a claim for relief.[56]

### 4. Count III Fails to State a Claim for Breach of Fiduciary Duty

Count III of the Complaint asserts a claim for breach of fiduciary duty against the individual defendants for approving the adoption of the Fee-Shifting Bylaw and for the manner in which the company publicly disclosed its adoption in a Form 8-K

---

[56] Dismissal of Count II also is warranted given that I already have found that the Complaint states a claim to invalidate the Fee-Shifting Bylaw under Section 109(b), which negates any practical need to resolve plaintiff's challenge under 102(b)(6). *See Cigna Health & Life Ins. Co. v. Audax Health Sols., Inc.*, 107 A.3d 1082, 1096 (Del. Ch. 2014) (denying motion for judgment on the pleadings on plaintiff's challenge under Section 102(b)(6) without ruling on the issue given the absence of relevant precedent interpreting Section 102(b)(6) and because the Court already had concluded that the transaction at issue violated another provision of the DGCL).

filing. In its prayer for relief, the Complaint asks that the Paylocity board be found liable for these alleged breaches.

Paylocity's certificate of incorporation contains a Section 102(b)(7) provision exculpating its directors from liability for breaches of the duty of care.[57] The Complaint contains no factual allegations calling into question the independence of any of the individual defendants, or suggesting that any of them had a personal or financial interest in the adoption of the Fee-Shifting Bylaw. Thus, as plaintiff's brief recognizes, the viability of Count III as a means of imposing personal liability on the directors depends on whether it is reasonably conceivable from the allegations of the Complaint that they acted in bad faith.

Chancellor Allen once described bad faith to mean "a transaction that is authorized for some purpose *other than* a genuine attempt to advance corporate welfare or is *known to constitute* a violation of applicable positive law."[58] More recently, this Court explained that "to state a bad-faith claim, a plaintiff must show either an extreme set of facts to establish that disinterested directors were intentionally disregarding their duties, or that the decision under attack is so far

---

[57] *See* Paylocity Certificate of Incorporation Article VII (Springer Aff. Ex. C).

[58] *Gagliardi v. TriFoods Int'l, Inc.*, 683 A.2d 1049, 1051 n.2 (Del. Ch. 1996).

beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than bad faith."[59]

Plaintiff argues it is reasonably conceivable that the individual defendants' conduct "could rise to the level of bad faith conduct" because they "knowingly adopted the Fee-Shifting Bylaw in violation of applicable positive law."[60] According to plaintiff, the individual defendants must have known they were violating the law when they approved the Fee-Shifting Bylaw because they took this action "more than six months *after* [the amendment to] Section 109(b) became effective."[61] This single allegation is insufficient in my view to support a reasonable inference that Paylocity's directors acted with scienter—that they *knew* they were violating the law—when they approved the Fee-Shifting Bylaw.

Noticeably absent from the Complaint are any factual allegations concerning the process the Paylocity board undertook when it considered the Fee-Shifting Bylaw proposal. Nowhere does the Complaint plead facts suggesting, for example, that the directors harbored some nefarious purpose, that they did not deliberate

---

[59] *In re Chelsea Therapeutics Int'l Ltd. Stockholders Litig.*, 2016 WL 3044721, at *7 (Del. Ch. May 20, 2016) (citations omitted); *see also Dent v. Ramtron Int'l Corp.*, 2014 WL 2931180, at *6-7 (Del. Ch. June 30, 2014).

[60] Pl.'s Ans. Br. 43 (internal quotations omitted).

[61] *Id.* at 43-44.

diligently, or that they failed to receive (or ignored) legal advice. It would be hard to imagine that the board of a public corporation would not have been advised by counsel in considering a proposal of this nature, particularly given the alleged "widespread press" surrounding the amendment of Section 109(b) that preceded the proposal.[62] Yet the complaint is silent on this score. It was within plaintiff's power to explore board's internal deliberations through a books and records inspection, but there is no indication in the record that he attempted to do so.

Apart from the absence of factual allegations concerning the board's process, it would not be reasonable to infer scienter because of the presence of the savings clause at the outset of the Fee-Shifting Bylaw stating that it would operate only "[t]o the fullest extent permitted by law." Although the savings clause cannot salvage the Fee-Shifting Bylaw from being rendered invalid for the reasons explained above, its presence negates the notion that the directors knew that they would be violating the law by approving the provision. As Chancellor Chandler remarked when considering an identical savings clause, "[t]o the extent Section 9.3 could possibly be construed as endorsing conduct that would be prohibited by Delaware law, the provision's own language bars such an interpretation."[63]

---

[62] Compl. ¶ 4.

[63] *Corti*, 2009 WL 2219260, at *18.

30

Plaintiff's second theory for the breach of fiduciary duty claim concerns the disclosures the company made when it filed a Form 8-K disclosing the adoption of a new Article VIII, which included the Fee-Shifting Bylaw and the exclusive forum provision. In particular, plaintiff questions the company's failure to disclose the adoption of the amendment to Section 109(b) and the board's "rationale for why the Fee Shifting Bylaw was permissible in light of Section 109(b)."[64] Plaintiff's quarrels with the disclosures in the Form 8-K do not come close to demonstrating bad faith to impose personal liability on the directors. More specifically, the failure to disclose the well-known public fact that Section 109(b) had been amended and the board's rationale for the validity of the Fee-Shifting Bylaw, the full text of which was attached as an exhibit to the Form 8-K, do not amount to such "an extreme set of facts" to warrant the inference that Paylocity's concededly disinterested directors intentionally disregarded their duties, or that they acted in a manner that is "inexplicable on any ground other than bad faith."

For the reasons explained above, the Complaint fails to plead facts warranting a reasonable inference of scienter necessary to sustain a claim that the members of Paylocity's board acted in bad faith in approving the Fee-Shifting Bylaw and with

---

[64] Pl.'s Ans. Br. 47.

31

regard to the company's disclosure of the same. Accordingly, Count III is dismissed for failure to state a claim for relief.

## C. Defendants' Unclean Hands Defense does not Warrant Dismissal of the Complaint

Defendants argue that the Complaint should be dismissed because plaintiff has come to Court with unclean hands on the theory that his "only possible motivation for this lawsuit" is to facilitate a future violation of Paylocity's exclusive-forum bylaw.[65] It is inappropriate to dismiss a complaint based on an affirmative defense unless "plaintiff can prove no set of facts to avoid it:"

> Because the Court generally is limited to the facts appearing on the face of the pleadings in ruling on a motion to dismiss, affirmative defenses, such as laches, are not ordinarily well-suited for disposition on such a motion. Thus, unless it is clear from the face of the complaint that an affirmative defense exists and that the plaintiff can prove no set of facts to avoid it, dismissal of the complaint based upon an affirmative defense is inappropriate.[66]

"The question of unclean hands is factual."[67] Given that the filing of this action has served the salutary purpose of ensuring that the adoption of the Fee-Shifting Bylaw does not go unchecked by judicial review, defendants' conclusory characterization

---

[65] Defs.' Op. Br. 42.

[66] *Stephen G. Perlman, Rearden LLC v. Vox Media, Inc.*, 2015 WL 5724838, at *12 (Del. Ch. Sept. 30, 2015).

[67] *Collins v. Burke*, 418 A.2d 999, 1004 (Del. 1980).

of plaintiff's motivations for filing this action is plainly a matter of significant factual dispute, and provides no basis for dismissal.

## III. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is denied in part and granted in part. Counts II and III are dismissed with prejudice. Count I survives.

**IT IS SO ORDERED**.