Lucian A. BEBCHUK, Plaintiff,

v.

CA, INC., Defendant.

C.A. No. 2145–N.

Court of Chancery of Delaware,
New Castle County.

Submitted: June 16, 2006.
Decided: June 22, 2006.

Jay W. Eisenhofer, Esquire, Stuart M. Grant, Esquire, Michael J. Barry, Esquire, P. Bradford deLeeuw, Esquire, Grant & Eisenhofer, Wilmington, Delaware, Attorneys for the Plaintiff.

Raymond J. DiCamillo, Esquire, Elizabeth C. Tucker, Esquire, Addie P. Asay, Esquire, Richards, Layton & Finger, Wilmington, Delaware; James C. Morphy, Esquire, Robert J. Giuffra, Jr., Esquire, Sullivan & Cromwell, New York, New York, Attorneys for the Defendant.

## OPINION

LAMB, Vice Chancellor.

The question presented by this declaratory judgment action is whether a stockholder proposed bylaw that seeks to limit the authority of a board of directors to enact a stockholder rights plan of unlimited duration is valid under Delaware law. Because the proposed bylaw has not yet been adopted by the stockholders and because no other compelling justification exists to trigger this court's jurisdiction, the court concludes that the issue in this case is not yet ripe for consideration. Accordingly, the plaintiff's request for declaratory relief is denied.

1. 17 C.F.R. § 240.14a–8.

## I.

### A. Parties

Lucian A. Bebchuk is the William J. Friedman and Alicia Townsend Friedman Professor of Law, Economics, and Finance, and Director of the Program on Corporate Governance at Harvard Law School. He is also the owner of 140 shares of CA, Inc. common stock, and has held that stock continuously for more than one year. CA, Inc., the defendant, a Delaware corporation, is an information technology management provider that develops and delivers software to its customers.

### B. Facts

#### 1. The Proposed Bylaw

In his capacity as a stockholder of CA, on March 23, 2006, Bebchuk submitted a proposed bylaw and supporting statement for inclusion in CA's proxy statement, in the form prescribed by SEC Rule 14a–8.[1] In general, the proposed bylaw seeks to affect the business and affairs of CA in two broad ways. First, in the absence of a ratifying vote of the CA stockholders, the bylaw requires a unanimous vote of the CA board of directors to adopt a stockholder rights plan or to amend such a plan in a way that extends its term. The proposed bylaw also requires that a board action to repeal the bylaw itself must be unanimous. Second, the bylaw requires that any stockholder rights plan adopted by the board, without stockholder ratification, shall automatically expire no later than one year after it is adopted or amended. Unless a stockholder rights plan is ratified by the stockholders, therefore, the proposed bylaw seeks to limit the power of the board to adopt, by majority vote, a poison pill of indefinite duration. The text of the proposed bylaw is reproduced directly below:

It is hereby RESOLVED that pursuant to Section 109 of the Delaware General Corporation Law, 8 *Del. C.* § 109, and Article IX of the Company's By-laws, the Company's By-laws are hereby amended by adding Article XI as follows:

**Section 1.** Notwithstanding anything in these By-laws to the contrary, the adoption of any stockholders rights plan, rights agreement, or any other form of "poison pill" which is designed to or has the effect of making an acquisition of large holdings of the Company's shares of stock more difficult or expensive ("Stockholder Rights Plan") or the amendment of any such Stockholder Rights Plan which has the effect of extending the term of the Stockholder Rights Plan or any rights or options provided thereunder, shall require the affirmative vote of all the members of the Board of Directors, and any Stockholder Rights Plan so adopted or amended and any rights or options provided thereunder shall expire no later than one year following the later of the date of its adoption and the date of its last such amendment.

**Section 2.** Section 1 of this article shall not apply to any Stockholder Rights Plan ratified by the stockholders.

**Section 3.** Notwithstanding anything in these By-laws to the contrary, a decision by the Board of Directors to amend or repeal this Article shall require the affirmative vote of all the members of the Board of Directors.

This By-law Amendment shall be effective immediately and automatically as of the date it is approved by the vote of stockholders in accordance with Article IX of the Company's By-laws.[2]

2. *CA's Response*

The board of CA, by letter dated April 21, 2006 to the SEC's Division of Corporation Finance, stated its belief that the proposed bylaw could be omitted from its proxy materials in accordance with SEC rules because, if implemented, the proposed bylaw would violate Delaware law.[3] This assertion of law was supported by a 17–page reasoned opinion from its counsel, Richards, Layton & Finger, surveying a broad range of cases and commentary and concluding that "[b]ased upon and subject to the foregoing, and subject to the limitations stated herein, it is our opinion that the Rights Plan Bylaw, if adopted by the stockholders, would not be valid under the General Corporation Law."[4] The SEC staff has since refused to issue the requested no-action relief, expressing "no view with respect to CA's intention to omit the [proposal] from the proxy materials relating to its next annual meeting of security holders."[5]

Bebchuk filed this suit in response to CA's April 21 letter, seeking a declaratory judgment that the proposed bylaw would not violate Delaware law if enacted. Bebchuk's complaint additionally seeks an injunction requiring CA to withdraw its April 21 no-action request, and ordering CA to refrain from taking any other action designed to contest the legality of the proposed bylaw under Delaware law.

---

2. Pl.'s Ex.1.

3. Def.'s Opening Br. Ex. 2.

4. *Id.* at Ex. 3.

5. CA, Inc., SEC No–Action Letter, 2006 WL 1547985, at *1 (June 5, 2006). The SEC staff's position is based on the pendency of this lawsuit.

## II.

■ Ripeness, the simple question of whether a suit has been brought at the correct time, goes to the very heart of whether a court has subject matter jurisdiction.[6] As such, the court has a positive duty to raise this issue on its own motion, even if neither party objects to the court's exercise of power over the case.[7] Because of its importance, ripeness is a doctrine common to both federal and state courts. The United States Supreme Court, for example, subjects issues of ripeness to a two-part test. First, the court should consider whether the issue before it is "fit" for review,[8] taking into account whether the claim depends on uncertain and contingent events that may not occur as anticipated, or may not occur at all.[9] In other words, a court should consider the finality of the issue presented for review and the extent to which resolution of the matter will depend on facts not yet developed.[10] Second, a court should consider the hardship to the parties of withholding the court's judgment.[11]

■ The Delaware courts have announced justiciability rules that closely resemble those followed at the federal level. In *Stroud v. Milliken Enterprises Inc.*,[12] the Delaware Supreme Court held that Delaware courts do not rule on cases unless they are "ripe for judicial determination," consistent with a well established reluctance to issue advisory or hypothetical opinions.[13] As the *Stroud* court explained:

> "[T]o the extent that the judicial branch contributes to law creation in our legal system, it legitimately does so interstitially and because it is required to do so by reason of specific facts that necessitate a judicial judgment." Whenever a court examines a matter where facts are not fully developed, it runs the risk not only of granting an incorrect judgment, but also of taking an inappropriate or premature step in the development of the law.[14]

Especial caution is appropriate, the court noted, in matters that raise "novel and important [issues] to Delaware Corporate law."[15] To engage those subjects when the dispute is not yet in a "concrete and final form" not only risks an improvident or premature decision, but also wastes judicial resources.[16] Thus, the court observed, a ripe dispute is one where litigation "sooner or later appears to be unavoidable," and one in which "the material facts are static."[17] This "common sense" approach requires the court to decide whether the interests of those who seek relief outweigh the interests of the court and of justice in "postponing review until the question arises in some more concrete and final form."[18]

---

**6.** 15 James Wm. Moore et al., Moore's Federal Practice ¶ 101.70[1] (3d ed.2006).

**7.** *Id.* at ¶ 101.73[2].

**8.** *Id.* at ¶ 101.76.

**9.** *Id.* at ¶ 101.76[1][a].

**10.** *Id.*

**11.** *Id.* at ¶ 101.76[2].

**12.** 552 A.2d 476 (Del.1989).

**13.** *Id.* at 479–80.

**14.** *Id.* at 480 (quoting *Schick Inc. v. Amalgamated Clothing and Textile Workers Union*, 533 A.2d 1235, 1239 (Del.Ch.1987)).

**15.** *Id.* at 480.

**16.** *Id.* at 481.

**17.** *Id.*

**18.** *Id.* at 480 (*citing Cont'l Air Lines, Inc. v. C.A.B.*, 522 F.2d 107, 124–25 (D.C.Cir.1975)).

On the basis of those principles, this court has twice held that cases very similar to the present case were unripe. In *Diceon Electronics, Inc. v. Calvary Partners, L.P.*,[19] a board of directors in the midst of a takeover battle with an investment fund[20] sought consideration of a director qualification bylaw in advance of the corporation's annual meeting. The court recited the ripeness standard set forth in *Stroud*, and found neither any reason to believe that the validity issue would inevitably arise, nor any compelling justification to rule in advance of the adoption.[21] Crucially, the court held that "despite Diceon's contrary assertion, its shareholders do not need an adjudication of the by-law proposal's validity in order to cast an informed vote. The requisite information can be provided by the parties themselves, by disclosing in their proxy materials their respective positions concerning the legality of the proposal."[22]

To the same effect is *General Data-Comm Industries v. Wisconsin Investment Board*,[23] which, relying heavily on *Diceon* as well as *Stroud*, declined to expedite a ruling on the validity of a bylaw, banning the repricing of options, that was proposed for consideration at a corporation's upcoming annual meeting.[24] The court found the question presented by the case to be difficult enough to be "worthy of careful consideration,"[25] and perceived no overriding reason to prematurely exercise its authority. Just as in *Diceon*, the stockholders would be able to cast an informed vote as to the proposal, and if the bylaw passed, its validity could easily be adjudicated later.[26]

▮ The facts in this case present an equally clear example of an unripe action. The key event necessary to vest jurisdiction in this court is the adoption of the proposed bylaw. As in *General Data-Comm* and *Diceon*, however, that event may never occur. Indeed, even if Bebchuk maintains his campaign to the end, the proposed bylaw faces a challenging stockholder vote. If Bebchuk is victorious, and CA maintains its belief that the bylaw is illegal, and manifests that belief by some concrete act, then there will be a ripe dispute capable of judicial resolution. As this court observed in *General DataComm*, "where no irreparable harm is threatened, prudence dictates that judicial action regarding whether the [bylaw] is valid should await an affirmative stockholder vote."[27]

In response to the court's questioning at oral argument, the parties responded to this rather obvious jurisdictional infirmity by claiming that Bebchuk suffered some injury, and therefore this action became ripe, when CA announced its intention under SEC Rule 14a–8[2] to exclude the proposed bylaw from the company's proxy materials. But that is flatly not the case. The SEC has already refused to issue a

---

**19.** 1990 WL 237089, 1990 Del. Ch. LEXIS 209 (Del.Ch. Dec. 27, 1990).

**20.** Calvary Partners hoped to enact a strict director qualification bylaw under which a majority of the Diceon board would be disqualified, and then planned to run a proxy contest to replace the board with its own candidates.

**21.** *Diceon*, 1990 WL 237089 at *2–3, 1990 Del.Ch. LEXIS 209 at *6–7.

**22.** *Id.* at *3, 1990 Del.Ch. LEXIS 209, *7.

**23.** 731 A.2d 818 (Del.Ch.1999).

**24.** *Id.* at 818–19.

**25.** *Id.* at 821.

**26.** *Id.* at 820 (*citing Diceon*, 1990 WL 237089, at *3, 1990 Del.Ch. LEXIS 209, at *8).

**27.** 731 A.2d at 820.

no-action letter blessing CA's choice to exclude the proposal, citing the pending litigation. If CA persists in its belief that it is entitled to exclude the bylaw from the proxy materials, then Bebchuk has full access to the administrative remedy of SEC review, and recourse to the federal courts, to enforce his right to place the proposal on the ballot.[28]

If the bylaw in question would inevitably be adopted in the proposed form,[29] or was obviously invalid,[30] the court might be more likely to act now. But nothing on the record suggests either of those things. Absent some kind of precommitment among the stockholders to vote for the bylaw, the court cannot possibly know whether the bylaw will be adopted at the annual meeting. There is equally no reason to believe that this bylaw is obviously invalid, in the way that an attempt to adopt a bylaw that abolishes the board of directors, or, as was suggested at oral argument, attempts to force the board to meet only at the North Pole in the dead of winter, would be. On those unrealistic facts, the court might well feel compelled to exercise its discretion in advance of a vote in an effort to curb a wasteful proxy process. But that is not the situation here.

Rather, just as in *Stroud* and its progeny, the factual context in this case could be of the utmost importance.[31] The excellent briefs of the parties and the court's own review of the divergent authorities concerning the validity of stockholder bylaws which limit a board of director's exercise of one of its powers reveal both that the legal issue in this case is fraught with tension and that any number of facts which might arise in the future could determine the course of this case as well as the court's analysis of this particular bylaw's validity. From a purely legal standpoint, it is not necessarily clear that a bylaw limiting the duration of a board-authorized rights plan to one year is either facially illegal as an unauthorized impingement upon the board's powers under the DGCL or an unreasonable intrusion into

**28.** SEC no-action letters are not subject to judicial review because they are not orders of the Commission. *See* JAMES D. COX, ROBERT H. HILLMAN, AND DONALD C. LANGEVOORT, SECURITIES REGULATION 12 (2001). However, an aggrieved stockholder may seek inclusion of a proposal wrongfully left out of a company's proxy materials by appealing the staff's decision to the Commission, or by exercising its implied private right of action under Rule 14a–8 to challenge the exclusion in federal court. *See Roosevelt v. E.I. Du Pont de Nemours & Co.*, 958 F.2d 416 (D.C.Cir.1992).

**29.** *Diceon*, 1990 WL 237089, *2 at n. 3, 1990 Del.Ch. LEXIS 209, *7 at n. 3.

**30.** *Id.* at *1–2, 1990 Del.Ch. LEXIS 209 at *5–6 (discussing the question of whether a court may rule on the validity of a bylaw that is "facially invalid" before it is enacted).

**31.** *Centaur Partners IV v. Nat'l Intergroup, Inc.*, 582 A.2d 923, 929 (Del.1990) is not to the contrary. There, the Delaware Supreme Court observed, in the context of deciding whether an insurgent stockholder seeking to adopt a bylaw needed 50.1% or 80% affirmative consents under a corporation's bylaws and certificate of incorporation, that even if the stockholder succeeded in passing the bylaw, it would be invalid. Although that case provides support for the proposition that this court may, in some circumstances, address issues of a bylaw's validity in advance of its adoption, the issue of ripeness was not raised in *Centaur Partners*. Moreover, the Supreme Court concluded that the bylaw proposal there in question, which, among other things, excluded its amendment or repeal by the board of directors, was clearly inconsistent with the provision of the company's certificate of incorporation that granted to the board of directors the power to make, amend, or repeal bylaws. Here, as in *General Data-Comm* and *Diceon*, the issue presented is less clear, and the court concludes that, applying normal prudential standards, the issue presented is not ripe for adjudication.

the board's exercise of its fiduciary duties. The question of facial illegality would require the court to determine whether, among other things, stockholders may use their power to adopt bylaws to impose *any* limitation on a board's power by a simple resolution to adopt a rights plan, which, as our courts have recognized, is itself a device to alter power arrangements within the corporation.[32] It is clearly established that section 157 of the DGCL empowers boards of directors to adopt rights plans.[33] It is less clear that the exercise of that power can never be the subject of a bylaw, whether enacted by the board of directors or by the stockholders.[34] Furthermore, the question of whether a bylaw unduly restricts the ability of a board of directors to exercise its fiduciary duties can only be examined in the context of an enacted bylaw that is said to actually threaten the board's ability to discharge its obligations to the corporation and its stockholders. Here, it is useful to remember, the proposed bylaw would allow the CA board to amend or repeal it by a unanimous vote.

Presumably, only a divided board of directors would fail to repeal a bylaw that substantially and improperly impeded it in discharging its fiduciary duties. At a minimum, the issue of the legality of the proposed bylaw is an important, undecided one for which, as the *Diceon* court said, "there is no compelling justification to rule in advance of its adoption."[35]

It is also the case that future factual developments could heavily influence the shape of any future litigation of this dispute. Most obviously, the CA stockholders might reject the proposed bylaw. Alternatively, CA and Bebchuk might, for example, come to an agreement by which the CA board adopts some restriction on the board's right to issue a poison pill, just as the dueling parties did in *UniSuper Limited v. News Corp.*[36] Or, by the time this case ripens into a justiciable controversy, the operative issue might be whether a board may repeal a bylaw enacted with the express purpose of limiting its own power.[37]

**32.** As Chancellor Allen observed in *Paramount Commc'ns Inc. v. Time Inc.*, 1989 WL 79880, *30 n. 22, 1989 Del.Ch. LEXIS 77, *88 n. 22 (Del.Ch. July 14, 1989), a stockholder rights plan is "a control mechanism and not a device with independent business purposes."

**33.** *Moran v. Household Int'l, Inc.*, 500 A.2d 1346 (Del.1985).

**34.** *See, e.g., Frantz Mfg. Co. v. EAC Indus.*, 501 A.2d 401 (1985) (holding that stockholder bylaws which, *inter alia,* required stockholder approval for indemnification of directors were valid under Delaware law); *Unisuper Ltd. v. News Corp.*, 2005 WL 3529317, 2005 Del.Ch. LEXIS 205 (Del.Ch. Dec. 20, 2005) (holding that a contractual restriction on the board's right to issue a poison pill was permissible under Delaware law).

**35.** 1990 WL 237089, at *2-3, 1990 Del.Ch. LEXIS 209, at *6-7.

**36.** 2005 WL 3529317, 2005 Del. Ch. LEXIS 205. *Cf. Quickturn Design Sys. v. Shapiro,*

721 A.2d 1281 (Del.1998) (holding that a slow-hand pill adopted by the board of directors is an invalid restriction on the board's fiduciary duties under Section 141(a)). CA essentially conceded at oral argument that even if the language of section 157 is read in the way it proposes, to mean that the terms of a rights issue must be within the sole discretion of the board of directors, the proposed restriction on the board proposed here would be permissible under that section if adopted pursuant to a board resolution.

**37.** *See, e.g.,* RODMAN WARD, EDWARD P. WELCH, & ANDREW TUREZYN, FOLK ON THE DELAWARE GENERAL CORPORATION LAW, § 109.7 (2005 ed.) ("The Court of Chancery has noted that the question of whether a stockholder-approved bylaw may be repealed by a board of directors with authority to amend the bylaws has not been clearly answered by a Delaware Court."); *see also General DataComm,* 731 A.2d at 821 (noting, in the context of a motion for expedited proceedings, that "the question of whether a stockholder-approved bylaw may be re-

The epilogues to both the *Diceon* and *General DataComm* matters are instructive in this regard. Diceon was able to announce soon after this court refused to hear its challenge to the proposed bylaw that its stockholders had overwhelmingly rejected the insurgent's proposal at its annual meeting.[38] On February 4, 1999, in contrast, the General DataComm stockholders approved the disputed stock option repricing bylaw.[39] Rather than return to this court for adjudication of their dispute, the General DataComm board chose to accept the stockholder's mandate, and thereby acquiesced to the bylaw's enactment. It still forms part of Chapter VII of that corporation's bylaws and operates to limit the board's powers under section 157.[40] In both cases, deciding the legal question in advance of the bylaw's adoption would have been a grave error, because no cognizable dispute ever arose between the parties that initially sought adjudication of their unripe claim. Similarly, the court cannot be expected to guess whether or how the dispute in this case might eventually crystallize, and to announce a sweeping legal rule, which addresses all those possibilities, in advance of that final disposition.

Deciding the question posed in this case now, therefore, would prematurely resolve a highly contentious and important matter before the court knows what pertinent facts might develop in the future. Worse, that ruling would validate the extraordinary idea that this court must immediately rule on the legality of any stockholder proposal just as soon as a stockholder has satisfied the SEC's minimal requirements for making such a proposal, and before the bylaw has even been enacted. As this court observed in *General DataComm,* one end result of that decision would be to turn this court into a sort of administrative venue for "shaping" the proxy materials of Delaware corporations.[41] Moreover, deciding this case now would mean that the fundamental issue of ripeness turned on the artificial pivot of whether a corporation is public or private. "But for" the fact that CA is regulated by the SEC, the parties would have no argument at all that there is any live legal dispute in this case. Rather, the plaintiff would be in the same position as any other stockholder with a proposed, but as yet unadopted, bylaw. That is to say, Bebchuk would utterly lack standing on ripeness grounds. The conflation of federal regulation and state corporate law the parties in this case would like the court to adopt is unsupported by our precedent.

---

pealed by a board of directors with such authority has not clearly been answered by a Delaware Court. However, the Supreme Court's decision in *Centaur Partners* and the views of a learned commentator [Hamermesh] suggest that the affirmative answer may be the correct one."); *American Int'l Rent a Car, Inc. v. Cross,* 1984 WL 8204, 1984 Del.Ch. LEXIS 413 (Del.Ch. May 9, 1984) ("If a majority of American International's stockholders in fact disapproved of the Board's amendment of the bylaw, several resources were, and continue to be, available to them. They could vote the incumbent directors out of office. *Alternatively, they could cause a special meeting of the stockholders to be held for the purpose of amending the bylaws and, as* *part of the amendment, they could remove from the Board the power to further amend the provision in question."*)(emphasis added).

**38.** Dean Takahashi, *Takeover Bid Defeated,* L.A. Times, Jan. 29, 1991, at D5.

**39.** General DataComm, Additional Definitive Proxy Soliciting Materials and Rule 14(a)(12) material (Form 14A), at 1 (Feb. 8, 1999).

**40.** General DataComm, Annual Report (Form 10–K) (Feb. 2, 2004) (*incorporating* General DataComm, Current Report (Form 8–K) (Sept. 19, 2003)).

**41.** 731 A.2d at 821–22.

## III.

In sum, this case is unripe because the relevant events requiring the court's review may never occur, and the facts on which the court's resolution of this highly important, and unsettled, matter may change. In that context, the court runs a high risk of ruling improvidently. Absent some compelling reason to take that risk, the well established doctrine of ripeness requires this court to refuse jurisdiction over the case at hand, and to refrain from issuing a purely advisory opinion on an ill developed record. Therefore, the request for declaratory relief, as now framed, is DENIED without prejudice. Because the action may yet ripen into a justiciable controversy, the court will refrain from dismissing the complaint at this time, pending future developments, unless the plaintiff chooses to proceed in some other fashion. IT IS SO ORDERED.