# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| NASK4INNOVATION SP. Z.O.O., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2021-0406-MTZ |
| | ) | |
| SCOTT SELLERS, TERRANCE M. DRABANT, AND ROSS A. BOTT, | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| SCOTT SELLERS, TERRANCE M. DRABANT, AND ROSS A. BOTT, | ) ) | |
| | ) | |
| Counterclaim Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NASK4INNOVATION SP. Z.O.O., | ) | |
| | ) | |
| Counterclaim Defendant. | ) | |

## MEMORANDUM OPINION

Date Submitted: June 9, 2022
Date Decided: September 12, 2022

Thomas A. Uebler and Joseph L. Christensen, MCCOLLOM D'EMILIO SMITH UEBLER LLC, Wilmington, Delaware, *Attorneys for Plaintiff and Counterclaim Defendant NaskInnovation Sp. Z.o.o.*

Ryan D. Stottmann and Miranda N. Gilbert, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware, *Attorneys for Defendant and Counterclaim Plaintiffs Scott Sellers, Terrance M. Drabant, and Ross A. Bott.*

**ZURN, Vice Chancellor.**

The parties to this case dispute the enforceability of a far-reaching release included in a letter of transmittal. A stockholder owed merger consideration was presented with a letter of transmittal that included language purporting to release all known and unknown claims—including claims for breach of fiduciary duty—against the seller and its directors and officers, among others. The stockholder protested this release but, when its objections fell on deaf ears, the stockholder signed the letter of transmittal and received its merger consideration.

The stockholder then came to this Court seeking a declaratory judgment that the release is unenforceable. The defendants, three former directors of the seller, filed a counterclaim seeking a declaratory judgment that the stockholder is bound by the letter of transmittal. The stockholder and the former directors joined issue on the releases' validity on the defendants' motion for judgment on the pleadings.

But the stockholder has not filed any other claims implicating the letter of transmittal or the releases contained therein, and the former directors have not raised the releases as a defense to any such claim. Accordingly, I find that the parties' claims are not ripe, and that opining on the enforceability of the release would be improperly advisory. Because the claims are not ripe, they are dismissed for lack of subject matter jurisdiction.

1

## I.  BACKGROUND

Nonparty Azul Systems Inc. ("Azul") was a privately held information technology company incorporated in Delaware.[1]  Plaintiff Nask4Innovation Sp. Z.o.o. ("Nask"), a Polish limited liability company, bought Azul preferred stock from Azul investors on two separate occasions:  once in October 2013, and again in June 2015.[2]  The stock was subject to a voting agreement (the "Voting Agreement") that imposed on Nask an obligation "to execute and deliver all related documentation and take such other action in support of the Sale of the Company as shall reasonably be requested by [Azul]."[3]

On January 31, 2020, Azul and affiliates of nonparty Vitruvian Partners executed an Agreement and Plan of Merger (the "Merger Agreement") by which a merger subsidiary would merge into Azul, with Azul surviving as a wholly-owned subsidiary of a Vitruvian Partners affiliate (the "Merger").[4]  The outstanding shares of Azul common and preferred stock would be cancelled after closing and converted into the right to receive consideration.[5]  Closing of the Merger was conditioned on 95% of Azul's stockholders approving the Merger Agreement, and Azul requested

---

[1] *See* Docket Item ("D.I.") 1 [hereinafter, "Compl."], Ex. 1 at 5.

[2] *See* D.I. 10, at 25 ¶¶ 15–16 [hereinafter "Countercl."]; *id.* at Exs. A, B.

[3] *See id.* at Ex. C § 1.8(a)(iv).

[4] Compl. Ex. 1 at 1.

[5] *Id.* at Ex. 1 at 9.

2

that approval in the form of written consents.[6] Azul's stockholders received certain materials relating to the Merger summarizing the terms of the Merger Agreement and attaching the agreement itself.[7]

The Merger Agreement conditioned payment of Merger consideration on each stockholder executing a letter of transmittal (the "LOT").[8] Among other things, the LOT includes a section purporting to release known and unknown claims—including for breaches of fiduciary duty—against Azul and its directors, among others (the "Releases").[9]

After receiving the LOT, Nask "informed [Azul's] counsel that the Releases were unenforceable," and requested that they be deleted.[10] Azul declined to modify the LOT, and Nask executed the LOT on April 28, 2021.[11] Nask has since received its initial Merger consideration.[12]

---

[6] *Id.* at Ex. 1 at 7.

[7] *See id.* at Ex. 1. These included a confidential information statement, notice of action by written consent, request for consent to the Merger, and notice of statutory appraisal rights.

[8] *See* Compl. ¶ 32.

[9] *Id.* at Ex. 2 § 11.

[10] Compl. ¶ 34.

[11] *See id.* ¶¶ 35, 36; *id.* at Ex. 2.

[12] Compl. ¶ 37; Countercl. at 31 ¶ 35. The Merger Agreement provides that Azul stockholders are entitled to certain consideration at closing, and that post-closing they may be entitled to additional funds held in escrow subject to certain purchase price adjustments and indemnity obligations. *See* Compl. Ex. 1 at 8–9, 16–17.

On May 10, 2021, Nask filed a complaint (the "Complaint") seeking only a declaratory judgment that the Releases are unenforceable against it, and that Nask is not barred from bringing suit for breach of fiduciary duty.[13] Nask named as defendants Azul's founder, CEO, and former director Scott Sellers, and former directors Terry Drabant and Ross Bott (together, "Defendants").[14]

On September 17, 2021, Defendants answered the Complaint and asserted a counterclaim for a declaratory judgment that Nask is bound by the terms of its LOT, including the Releases (the "Counterclaim").[15]

On December 9, 2021, Defendants moved for judgment on the pleadings pursuant to Court of Chancery Rule 12(c) (the "Motion").[16] The parties briefed the Motion and I heard oral argument on June 9, 2022.[17]

Nask advances a series of arguments as to why the Releases are unenforceable against it. First, Nask contends that the LOT is unenforceable as a separate contract because Nask received no additional consideration for signing the LOT, as Azul had a preexisting duty to pay its stockholders the Merger consideration. Second, Nask argues the Releases are voidable because Azul's directors were interested in the

---

[13] *See* Compl. ¶¶ 38–52; *id.* at 14 at A–B.

[14] *Id.* ¶¶ 5–7.

[15] *See* Countercl. at 32–33 ¶¶ 41–46.

[16] D.I. 13.

[17] *See* D.I. 14; D.I. 16; D.I. 19; D.I. 23.

Releases. Third, Nask argues the Releases are void because Defendants failed to disclose all material information in connection with seeking approval of the Releases. Fourth, Nask contends Defendants coerced Nask into signing the Releases by withholding the Merger consideration unless Nask agreed. Finally, Nask contends that the Releases are unenforceable as a matter of public policy.

Defendants argue that the Voting Agreement compelled Nask to sign the LOT to support the sale of Azul. Defendants also argue Nask's signing of the LOT and acceptance of the Merger consideration constitutes an act of acquiescence or a waiver. Lastly, Defendants contend that Nask should not be permitted to avoid the terms of the LOT because it is a valid and binding contract supported by consideration.

Nask has not filed a breach of fiduciary duty action against Azul's former directors, and accordingly, Defendants have not had reason to wield the Releases. At most, Nask says it "may bring a plenary breach of fiduciary duty action against the Defendants regarding the Merger."[18]

---

[18] Compl. ¶ 3.

## II. ANALYSIS

"The Court of Chancery is proudly a court of limited jurisdiction."[19] The Court has a duty to determine whether it has subject matter jurisdiction over a plaintiff's claims and can raise the issue sua sponte.[20]

"The Court of Chancery can exercise subject matter jurisdiction only when a case falls into one of three buckets."[21] Those buckets contain cases in which (i) "a plaintiff states an equitable claim," (ii) "a plaintiff requests equitable relief and there is no adequate remedy at law," and (iii) "jurisdiction exists by statute."[22] Claims

---

[19] *Perlman v. Vox Media, Inc.*, 2019 WL 2647520, at *4 (Del. Ch. June 27, 2019), *aff'd*, 249 A.3d 375 (Del. 2021).

[20] *See, e.g.*, Ct. Ch. R. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the Court lacks jurisdiction of the subject matter, the Court shall dismiss the action."); *Envo, Inc. v. Walters*, 2009 WL 5173807, at *4 n.10 (Del. Ch. Dec. 30, 2009) ("The issue of subject matter jurisdiction is so crucial that it may be raised at any time before final judgment and by the court sua sponte."; *Int'l Bus. Machs. Corp. v. Comdisco, Inc.*, 602 A.2d 74, 77 n.5 (Del. Ch. 1991) ("[U]nlike many jurisdictions, judges in the Delaware Court of Chancery are obligated to decide whether a matter comes within the equitable jurisdiction of this Court regardless of whether the issue has been raised by the parties."). Whether a claim is ripe is a question of subject matter jurisdiction. *Bebchuk v. CA, Inc.*, 902 A.2d 737, 740 (Del. Ch. 2006) ("Ripeness, the simple question of whether a suit has been brought at the correct time, goes to the very heart of whether a court has subject matter jurisdiction. As such, the court has a positive duty to raise this issue on its own motion, even if neither party objects to the court's exercise of power over the case." (footnote omitted)); *Humanigen, Inc. v. Savant Neglected Diseases, LLC*, 2021 WL 4344172, at *9 (Del. Super. Sept. 23, 2021) ("A ripeness challenge attacks a court's subject matter jurisdiction, and so may be fended *sua sponte*.").

[21] *Delawareans for Educ. Opportunity v. Carney*, 2018 WL 4849935, at *5 (Del. Ch. Oct. 5, 2018); *see also Candlewood Timber Grp., LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 997 (Del. 2004) (identifying the three ways the "Court of Chancery can acquire subject matter jurisdiction").

[22] *Carney*, 2018 WL 4849935, at *5.

6

seeking a declaratory judgment must still fall within one of these buckets.[23]  Both

parties seek to invoke this Court's limited jurisdiction through the second and third

buckets:  Nask relies on 8 *Del. C.* § 111 and 10 *Del. C.* §§ 341–342,[24] and Defendants

rely on 8 *Del. C.* § 111 and 10 *Del. C.* § 341.[25]

Even if a declaratory judgment claim falls into one of the above three

categories, subject matter jurisdiction still depends on the existence of an "actual

controversy" between the parties.[26]  The Delaware Supreme Court has set forth the

criteria by which a controversy will be considered an "actual controversy":

> (1) It must be a controversy involving the rights or other legal relations
> of the party seeking declaratory relief; (2) it must be a controversy in
> which the claim of right or other legal interest is asserted against one
> who has an interest in contesting the claim; (3) the controversy must be
> between parties whose interests are real and adverse; (4) the issue
> involved in the controversy must be ripe for judicial determination.[27]

---

[23] *Diebold Comput. Leasing, Inc. v. Com. Credit Corp.*, 267 A.2d 586, 591 (Del. 1970) ("[T]he Chancery Court has jurisdiction in a declaratory judgment action if there is any underlying basis for equity jurisdiction measured by traditional standards.").

[24] Compl. ¶ 8.

[25] Countercl. at 24 ¶ 11.

[26] *See XL Specialty Ins. Co. v. WMI Liquidating Tr.*, 93 A.3d 1208, 1216–17 (Del. 2014).

[27] *Id.* at 1217 (quoting *Stroud v. Milliken Enters., Inc.*, 552 A.2d 476, 479–80 (Del. 1989)).

This case begs the question of whether the parties' claims are ripe for judicial determination. This Court will decline subject matter jurisdiction over a claim that is not ripe.[28]

In determining whether a dispute is ripe, the Court must take a practical view of all relevant facts and make a common-sense determination of whether adjudicating a dispute at present is a prudent use of judicial resources.[29] In doing so, the Court must weigh "the benefits to be derived from issuing a declaratory judgment . . . against the court's desire to avoid advisory opinions."[30] Specifically, the Court will weigh the interests of the party seeking relief in obtaining a prompt resolution of the question at issue, including the harm that would be suffered if the Court waits

---

[28] *Feldman v. AS Roma SPV GP, LLC*, 2021 WL 3087042, at *10 (Del. Ch. July 22, 2021) ("If a claim is moot or not ripe, the Court cannot assert subject matter jurisdiction over it." (citing *Stroud v. Milliken Enters., Inc.*, 552 A.2d 476, 480 (Del. 1989)); *Solak v. Sarowitz*, 153 A.3d 729, 736 (Del. Ch. 2016) ("The ripeness doctrine prevents Delaware courts from exercising jurisdiction over disputes . . . ."); *K&K Screw Prod., L.L.C. v. Emerick Cap. Invs., Inc.*, 2011 WL 3505354, at *9 (Del. Ch. Aug. 9, 2011) ("Ripeness refers to whether a suit has been brought at the correct time. It is essential for a controversy to be justiciable and, therefore, for the Court to have subject matter jurisdiction over it.").

[29] *XL Specialty Ins.*, 93 A.3d at 1217–18.

[30] *In Re Allergan, Inc. S'holder Litig.*, 2014 WL 5791350, at *6 (Del. Ch. Nov. 7, 2014); *Monsanto Co. v. Aetna Cas. & Sur. Co.*, 565 A.2d 268, 274 (Del. Super. 1989); *see also Stroud v. Milliken Enters., Inc.*, 552 A.2d 476, 480 (Del. 1989) ("The reasons for not rendering a hypothetical opinion must be weighed against the benefits to be derived from the rendering of a declaratory judgment."); *KLM Royal Dutch Airlines v. Checchi*, 698 A.2d 380, 382 (Del. Ch. 1997) ("Determining whether the parties' dispute is ready for decision requires consideration of, *inter alia*, the present effects of the challenged conduct versus the future harm to be suffered by the plaintiff if resolution is delayed, the likelihood of a change in the factual circumstances, and the legal issues involved. These considerations must be weighed against the important policies enumerated above.").

to hear the dispute, on one hand, and the conservation of limited judicial resources and the risk of granting an unsound judgment by ruling on a procedurally or factually premature dispute, on the other.[31]

Both parties seek a declaratory judgment regarding the Releases' enforceability.[32] For purposes of this analysis, I assume the two claims fall within the ambit of 8 *Del. C.* § 111 and therefore may be adjudicated by this Court if an actual controversy exists.

The parties' interests in immediate declaratory relief are minimal. Nask has taken the position that it cannot bring a breach of fiduciary duty action unless it first receives a declaratory judgment that the Releases are unenforceable and that Nask is not barred from bringing that suit. But the existence of a potential defense to liability does not preclude a plaintiff from bringing suit, so long as the plaintiff in good faith believes it can prevail over that defense. Nask's apparent good faith basis to conclude the Releases are unenforceable can support a breach of fiduciary duty suit just as well as it can support this suit on the Releases alone.

In *Schick Inc. v. Amalgamated Clothing & Textile Workers Union*, Chancellor Allen explained that a declaratory judgment action designed to obtain a defendant-

---

[31] *See XL Specialty Ins.*, 93 A.3d at 1217–18; *Stroud*, 552 A.2d at 480; *KLM Royal Dutch Airlines*, 698 A.2d at 382.

[32] *See* Compl. ¶¶ 38–52; Countecl. at 32–33 ¶¶ 41–46.

9

friendly ruling on a potential derivative plaintiff's standing before the derivative action was filed was not ripe.[33] He concluded that lack-of-standing defense was most efficiently and prudently heard in the context of the derivative suit.[34] Following his lead, I do not see why bifurcating the Release defense from an underlying claim is helpful, let alone necessary or a prudent use of judicial resources.[35] I conclude the only benefit of an immediate declaratory judgment to the parties is greater certainty as to whether the Releases are enforceable against Nask, which is insufficient to render the claims ripe.[36] For the same reasons, the parties

---

[33] *Schick Inc. v. Amalgamated Clothing & Textile Workers Union*, 533 A.2d 1235, 1241–42 (Del. Ch. 1987).

[34] *Id.*

[35] *See id.* at 1240–1242.

*See Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 623 A.2d 1133, 1137 (Del. Super. 1992) ("A litigant need not have suffered actual harm, but an actual controversy must exist so that judicial resources are not wasted on hypothetical disputes or on situations in which a judicial declaration will not end the dispute between the parties.").

[36] *See XL Specialty Ins. Co.*, 93 A.3d at 1220 (noting a potential insurance claimant's interest in guidance on how much coverage would be available if it were to initiate litigation was not sufficient to ripen its declaratory judgment claim); *Schick*, 533 A.2d at 1242 ("Employment of the declaratory judgment procedure solely to achieve tactical advantage should not be endorsed."); *Dana Corp. v. LTV Corp.*, 668 A.2d 752, 757 (Del. Ch. 1995) ("A court will not grant declaratory relief to a party whose primary purpose is to achieve an unfair procedural advantage." (citing *Schick*, 533 A.2d at 1242), *aff'd*, 670 A.2d 1337 (Del. 1995). *But see Schick*, 533 A.2d at 1242 (contrasting an unripe declaratory judgment claim on a putative plaintiff's standing against a claim that a putative plaintiff "is barred by limitations or laches from asserting the substantive claim").

will suffer no harm if they wait to receive a ruling on the Releases until such time as the Releases are raised as a defense to liability, if ever.[37]

More fundamentally, any breach of fiduciary duty dispute between the parties is hypothetical, and litigation regarding the Releases' enforceability specifically is not inevitable.[38] The Complaint suggests, but stops short of stating, that Nask will bring suit for breach of fiduciary duty in connection with the Merger if it prevails in this action.[39] Even if Nask brought that suit, the Releases' enforceability would not be at issue unless Defendants raised them as a defense.[40] Under these circumstances, waiting to adjudicate the Releases' enforceability until they are otherwise before the Court is a better use of judicial resources.

Navigating the declaratory judgment claims exchanged between Nask and Defendants at this juncture would also necessarily require careful steering around

---

[37] *Schick*, 533 A.2d at 141 (noting the putative defendant would "bear no hardship if it must await the filing of a derivative claim to litigate its assertion that" the putative plaintiff lacked standing).

[38] *See In re Allergan, Inc.*, 2014 WL 5791350, at *9; *K&K Screw Prod., L.L.C.*, 2011 WL 3505354, at *10; *Stroud*, 552 A.2d at 481 (citing *Stabler v. Ramsay*, 32 Del. Ch. 547, 550 (Del. 1952)).

[39] *See* Compl. ¶¶ 3, 14. Mere allegations that an event may occur in the future are insufficient to render a dispute ripe for adjudication. *See Hoechst Celanese Corp.*, 623 A.2d at 1137.

[40] *See Chester Cnty. Emps'. Ret. Fund v. New Residential Inv. Corp.*, 2016 WL 5865004, at *13 (Del. Ch. Oct. 7, 2016), *aff'd*, 186 A.3d 798 (Del. 2018).

11

hazards of preclusion and stare decisis.[41] Nask and Defendants brought individual claims seeking declarations regarding only Nask's LOT. Other Azul stockholders who did or did not sign an LOT are not before the Court to defend and protect their rights. But those stockholders, and any release they signed, would likely be before the Court if Nask or another stockholder brings a representative breach of fiduciary duty action. Nor did Nask name Azul as a defendant.[42] The speculative implications of a ruling on Nask's LOT on Azul, its directors, and its other current and former stockholders counsel against taking on that claim as presented here. These same concerns apply to the Counterclaim. These hazards counsel in favor of a commonsense finding that the Release claims, standing alone and brought by and against a single stockholder in its own capacity, are not ripe.[43]

---

[41] *Schick*, 533 A.2d at 1239 ("[T]o the extent that the judicial branch contributes to law creation in our legal system, it legitimately does so interstitially and because it is required to do so by reason of specific facts that necessitate a judicial judgment. To address a matter before the facts surrounding the dispute are fully developed necessarily not only increases the risk of an incorrect judgment in the particular case, but risks, as well, an inappropriate or unnecessary step in the incremental law building process itself.").

[42] Where an action seeks to validate or invalidate a contract to which a corporation is a party, "it is proper and necessary to make such . . . corporation a party defendant to the suit, because that . . . corporation has a substantial interest" in that determination. *See Elster v. Am. Airlines*, 106 A.2d 202, 204 (Del. Ch. 1954). The joinder of "indispensable parties is a condition precedent to issuing judgment." *Germaninvestments AG v. Allomet Corp.*, 2020 WL 6870459, at *6 (Del. Ch. Nov. 20, 2020). Azul may need to be joined as a party to any litigation involving the validity of the LOT or its terms. *See* Ct. Ch. R. 19(a)(2).

[43] *See The O'Brien Corp. v. Hunt-Wesson, Inc.*, 1999 WL 126996, at *8 (Del. Ch. Feb. 25, 1999) ("As was the case in *Dana*, a ruling in O'Brien's favor in this case would not bind the plaintiffs in the Lead Pigment Litigations nor can it preclude those plaintiffs

12

Finally, I note that aspects of this case may touch on "novel and important" issues of Delaware corporate law, including the viability of a stockholder waiver of the duty of loyalty in a letter of transmittal.[44]  The implication of such issues weighs heavily in favor of the Court waiting to resolve these questions until this dispute arrives before the Court in a more concrete form.[45]

For the forgoing reasons, common sense recommends against issuing declaratory relief to either party at this time.

## III.   CONCLUSION

For the forgoing reasons, both the Complaint and the Counterclaim are **DISMISSED** without prejudice for want of subject matter jurisdiction.  Counsel shall submit a proposed implementing order.

---

from arguing that the laws of states other than Delaware's should determine whether O'Brien is liable to them.  Its only effect would be to assist O'Brien in a suit against Hunt–Wesson in the event that O'Brien is ever found liable in one of the Lead Pigment Litgations."); *Aviva Life & Annuity Co. v. Am. Gen. Life Ins. Co.*, 2014 WL 1677798, at *11 (Del. Ch. Apr. 29, 2014) (finding claim seeking a declaratory judgment was not ripe, in part because "even if [the Court] were to address and decide th[e] issue, [its] decision would not be binding on the IRS or the federal courts").

[44] *See Stroud*, 552 A.2d at 481.

[45] *Id.* at 481 ("These issues are novel and important ones to Delaware corporate law as well as to these parties.  The significance of these issues requires this Court to demand that the dispute between the parties be close to a 'concrete and final form.'" (quoting *Schick*, 533 A.2d at 1239)); *Bebchuk*, 902 A.2d at 740 ("Especial caution is appropriate, the [*Stroud*] court noted, in matters that raise 'novel and important [issues] to Delaware Corporate law.'" (second alteration in original) (quoting *Stroud*, 552 A.2d at 481)).

13