**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

NATHAN A. COOK
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

June 2, 2025

Christine M. Mackintosh
Rebecca A. Musarra
Vivek Upadhya
William G. Passannante II
Grant & Eisenhofer P.A.
123 Justison Street, 7th Floor
Wilmington, DE 19801

Blake Rohrbacher
Matthew W. Murphy
John M. O'Toole
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801

Gregory V. Varallo
Andrew E. Blumberg
Daniel E. Meyer
Bernstein Litowitz
  Berger & Grossmann LLP
500 Delaware Avenue, Suite 901
Wilmington, DE 19801

RE: *George Assad v. Brian D. Chambers, et al.,*
    C.A. No. 2024-0688-NAC

Dear Counsel:

This letter addresses Defendants'[1] motion to dismiss pursuant to Court of Chancery Rules 12(b)(1) and 12(b)(6). For the reasons described below, Defendants' motion to dismiss is granted.

---

[1] Defendants are Brian D. Chambers, Eduardo E. Cordeiro, Adrienne D. Elsner, Alfred E. Festa, Edward F. Lonergan, Maryann T. Mannen, Paul E. Martin, W. Howard Morris, Suzanne P. Nimocks, John D. Williams, and Owens Corning.

## I.  BACKGROUND

Plaintiff George Assad is a stockholder of Owens Corning (the "Company").[2] Owens Corning is a Delaware-incorporated building and construction materials company.[3]

In June 2023, the Company's board of directors (the "Board") amended Owens Corning's advance notice bylaws (the "Advance Notice Bylaws").[4]  One year later, in June 2024, Plaintiff commenced this action challenging the Advance Notice Bylaws.[5] Plaintiff neither intends to nominate a director to the Owens Corning Board, nor identifies a stockholder who does.[6]

### A.  The Advance Notice Bylaws

On June 14, 2023, against the backdrop of the SEC's adoption of Rule 14a-19 (the "Universal Proxy Rule"), the Company's general counsel, Gina Beredo, recommended that the Board's Governance and Nominating Committee (the "Committee") revisit the Company's advance notice bylaws.[7]  The Universal Proxy

---

[2] *George Assad v. Brian D. Chambers, et al.*, C.A. No. 2024-0688-NAC, Docket ("Dkt.") 50, Corrected Am. Verified S'holder Class Action Compl. ("Am. Compl.") ¶ 18.

[3] *Id.* ¶ 29.

[4] *Id.* ¶ 42.

[5] Dkt. 1., Verified S'holder Class Action Compl. ("Original Compl.").

[6] *See* Am. Compl.; *see also* Dkt. 70, Tr. of Oral Arg. on Defs.' Mots. to Dismiss 69:15–22 (explaining that Plaintiff does not intend to run a proxy contest).

[7] Am. Compl. ¶¶ 35, 37.

Rule had gone into effect a year prior, and in December 2022, the SEC had issued supplemental guidance clarifying that a company could still exclude stockholder nominees from its proxy card if "the dissident shareholder[] fail[s] to comply with [the Company's] advance notice bylaw requirements."[8]

The memorandum the Committee received in connection with the Advance Notice Bylaws noted that "[g]iven the possibility that dissidents will utilize a universal proxy card, it is recommended that the advance notice provisions, among other provisions, of the Bylaws be revised . . . to require stockholders to provide earlier disclosure of an intention to use the universal proxy card and verify and enforce stockholders' compliance with the solicitation requirement under Rule 14a-19 of the Securities and Exchange Act of 1934 . . . ."[9] The memorandum recommended that "the advance notice provisions also be amended to align with current market practice more closely by enhancing the procedures and disclosure requirements for director nominations made and business proposals submitted by stockholders . . . ."[10] To that end, the memorandum advised the Board adopt the "Enhanced Advance Notice Provision Amendments," which would "expand the required disclosure for submitting stockholders to obtain more detailed information about the proposal's proponent, the

---

[8] *Id.* ¶ 35 (alterations in original).

[9] *Id.* ¶ 37 (screenshot).

[10] *Id.* ¶ 38 (screenshot).

proposal, other interested parties, and the ownership interest in the Corporation of the proponent . . . ."[11] The memorandum explained that collecting "[t]his detailed information may enable the Corporation to mount a stronger defense against [a] proposal."[12]

The meeting minutes indicate that before the meeting, the Committee received "benchmarking tables" which "showed the number of the Corporation's proxy peers that had adopted the proposed revisions."[13] The Committee and Beredo also discussed the benefits of adopting the Advance Notice Bylaws including "the advantages of earlier notice of dissident stockholders to use a universal proxy card and greater disclosure about nominating stockholders and their nominees."[14]

The Committee recommended the Board adopt the Advance Notice Bylaws.[15] The next day, the Board considered the Advance Notice Bylaws. The minutes note the Board weighed the same benefits of the Advance Notice Bylaws that the Committee had: "the advantages of earlier notice of dissident stockholders to use a universal proxy card and greater disclosure about nominating stockholders and their

---

[11] *Id.*

[12] *Id.*

[13] *Id.* ¶ 39 (screenshot)

[14] *Id.*

[15] *Id.* ¶ 40 (screenshot).

nominees."[16] The Board formally adopted the Advance Notice Bylaws the same day.[17]

Notably, Plaintiff's original complaint alleged that the challenged bylaw provisions "are facially invalid."[18] Following the Delaware Supreme Court's decision in *Kellner v. AIM ImmunoTech Inc.* ("*Kellner II*"),[19] Plaintiff filed an amended complaint that replaced the phrase "facially invalid" with "unenforceable"[20] and expressly disclaimed any facial validity challenge.[21]

Plaintiff takes issue with two features of the Advance Notice Bylaws: the "Acting in Concert" definition and the "Ownership Provision."[22] Plaintiff alleges that these provisions are "preclusive both individually, and when they work together in interlocking ways."[23] But Plaintiff neither intends to nominate a director to the Board, nor can Plaintiff identify a stockholder who does. Defendants have moved to

---

[16] *Id.*

[17] *Id.* ¶ 45.

[18] Original Compl. ¶ 44.

[19] 320 A.3d 239 (Del. 2024).

[20] Am. Compl. ¶ 66; *accord id.* Ex. 1 (redline).

[21] Am. Compl. at 2 n.3 ("For the avoidance of doubt, Plaintiff does not challenge the facial validity of the [Advance Notice Bylaws].").

[22] For the text of the "Acting in Concert" definition and the "Ownership Provision," see Am. Compl. ¶¶ 46–65; Am. Compl. Ex. 3.

[23] Am. Compl. ¶ 45.

dismiss the amended complaint under Court of Chancery Rules 12(b)(1) and 12(b)(6).[24]

## II. ANALYSIS

When board-adopted advance notice bylaws are challenged, this Court reviews the bylaws first for legality, if contested, and second for equity.[25] Here, Plaintiff has disavowed any facial validity challenge and asks the Court to undertake an equitable review, declaring that the Advance Notice Bylaws are "unenforceable" and the "Defendants . . . breached their fiduciary duty of loyalty by adopting and maintaining [them]."[26]

But for this Court to undertake such an equitable review, it must be presented with a ripe dispute.[27] Because Plaintiff has disclaimed a facial validity challenge but has not demonstrated that a ripe controversy exists, the Court grants Defendants'

---

[24] Dkt. 53, Defs.' Mot. to Dismiss Am. Compl.

[25] *See, e.g.*, *Kellner II*, 320 A.3d at 259 ("[W]hen corporate action is challenged, it must be twice-tested – first for legal authorization, and second by equity. The same principles apply to board-adopted advance notice bylaws." (footnote omitted)).

[26] Am. Compl. at 31.

[27] *Siegel v. Morse*, 2025 WL 1101624, at *5 (Del. Ch. Apr. 14, 2025). The plaintiff in *Siegel* filed a nearly identical complaint against the directors of the AES Corporation weeks before Plaintiff filed this class action. The parties in both cases are clients of the same few law firms. Although the two cases were never formally coordinated, counsel argued the motions to dismiss at the same hearing.

motion to dismiss under Rule 12(b)(1). As such, Defendants' motion to dismiss per Rule 12(b)(6) is moot.

## A. The Standard of Review

If a party moves to dismiss under Rule 12(b)(1), the non-movant bears the burden of establishing subject matter jurisdiction.[28] "Unlike the standards employed in Rule 12(b)(6) analysis, the guidelines for the Court's review of [a] Rule 12(b)(1) motion are far more demanding of the non-movant."[29] Dismissal under Rule 12(b)(1) is appropriate if the record, including evidence outside the pleadings, indicates that the Court does not have subject matter jurisdiction.[30]

## B. Plaintiff's Claim Is Not Ripe

"Ripeness, the simple question of whether a suit has been brought at the correct time, goes to the very heart of whether a court has subject matter jurisdiction."[31] "A ripeness determination requires a common sense assessment of whether the interests of the party seeking immediate relief outweigh the concerns of

---

[28] *E.g.*, *de Adler v. Upper New York Inv. Co. LLC*, 2013 WL 5874645, at *7 (Del. Ch. Oct. 31, 2013).

[29] *CLP Toxicology, Inc. v. Casla Bio Hldgs. LLC*, 2021 WL 2588905, at *8 (Del. Ch. June 14, 2021) (alteration in original) (quoting *Appriva S'holder Litig. Co., LLC v. EV3, Inc.*, 937 A.2d 1275, 1284 n.14 (Del. 2007)).

[30] *K&K Screw Prods., L.L.C. v. Emerick Cap. Invs., Inc.*, 2011 WL 3505354, at *6 (Del. Ch. Aug. 9, 2011).

[31] *Bebchuk v. CA, Inc.*, 902 A.2d 737, 740 (Del. Ch. 2006).

the court 'in postponing review until the question arises in some more concrete and final form.'"[32]  Delaware courts decline to exercise subject matter jurisdiction on ripeness grounds where adjudicating the dispute "would prematurely resolve a highly contentious and important matter before the court knows what pertinent facts might develop in the future."[33]

*Kellner II* instructs that, before undertaking equitable review of an advance notice bylaw, this Court must consider whether is a "'genuine, extant controversy' involving the adoption, amendment, or application of bylaws" warranting such review.[34]  The Court will examine whether "litigation is 'unavoidable' and the 'material facts are static.'"[35]  If not, the dispute is unripe.[36]

As in *Siegel*, Plaintiff here acknowledges he will not, and has no interest in, running a proxy contest.[37]  And even if he did, Plaintiff does not allege that any of challenged disclosure requirements would apply to him if he were to submit a

---

[32] *XL Specialty Ins. Co. v. WMI Liquidating Tr.*, 93 A.3d 1208, 1217 (Del. 2014) (quoting *Stroud v. Milliken Enters., Inc.* ("*Stroud I*"), 552 A.2d 476, 480 (Del. 1989)).

[33] *Bebchuk*, 902 A.2d at 744.

[34] *Kellner II*, 320 A.3d at 258–59 (quoting *Boilermakers Loc. 154 Ret. Fund v. Chevron Corp.*, 73 A.3d 934, 949 (Del. Ch. 2013)).

[35] *Kellner II*, 320 A.3d at 259 n.139 (citing *Stroud I*, 552 A.2d at 481).

[36] As in *Siegel*, Plaintiff expressly disclaims any facial validity challenge to the Advance Notice Bylaws.  Thus, I consider and decide only the question before me:  whether Plaintiff has a ripe claim for equitable review.

[37] Tr. of Oral Arg. on Defs.' Mot. to Dismiss 69:17–22.

nomination. Further, Plaintiff cannot identify a single Owens Corning stockholder who is, in fact, deterred (or "chilled") from nominating, or potentially nominating, a director for election to the Owens Corning Board by the Advance Notice Bylaws. Again, so too in *Siegel*.

Plaintiff instead generically alleges a hypothetical: that the Advance Notice Bylaws "chill and impermissibly burden the free exercise of the stockholder franchise."[38] Having alleged this hypothetical, Plaintiff demands this Court set in motion the gears of equitable review and all that entails—including, presumably, discovery and a trial. Plaintiff further asks this Court to issue a ruling, in equity, even though no stockholder can be identified who seeks to nominate, or is even considering nominating, a director for election to the Owens Corning Board and who perceives the Advance Notice Bylaws as an actual or possible impediment to doing so.

At some point in the future, an Owens Corning stockholder may step forward to say she is deterred, or "chilled," from nominating, or even potentially nominating, an individual for election to the Board. The Board will have an opportunity to respond.[39] And the Court will have some practical footing on which to ground

---

[38] Am. Compl. ¶ 80.

[39] For example, the Board may modify the bylaws, as sometimes happens.

equitable analysis.[40]  But without *any* of that, equitable review is ill-advised and ill-suited to the circumstances, like a lever without a fulcrum.

Whether any such stockholder will step forward in the future is unknown, and the facts that might arise in such an instance are not static.  Until then, this Court reasonably "cannot be expected to guess whether or how the dispute in this case might eventually crystallize, and to announce a sweeping legal rule, which addresses all those possibilities . . . ."[41]

Tellingly, Plaintiff does not cite a single case where this Court has allowed a stockholder to challenge the enforceability of an advance notice bylaw when no stockholder intends to run a proxy contest or, at least, is contemplating one.[42] Instead, referencing the materials the Committee reviewed when considering the Advance Notice Bylaws and Board meeting minutes, Plaintiff asserts that he "adequately plead[ed] that the Board acted defensively in adopting the [Advance Notice Bylaws]" which "suffices to state a ripe *Unocal* claim."[43]  Not so.

---

[40] I leave for future cases where the dividing line between ripe and unripe might lie.  The best answer is likely that there is no single, all-encompassing rule and instead it will depend on the circumstances.  Hence the "common sense assessment" this Court is instructed to make.

[41] *Bebchuk*, 902 A.2d at 744.

[42] *See* Am. Compl.

[43] Dkt. 58, Pl.'s Answering Br. in Opp. to Defs.' Mot. to Dismiss at 15.

Although "Delaware courts scrutinize closely corporate acts that affect stockholder voting,"[44] as already explained, before a court will undertake such equitable review, it must be presented with a "genuine, extant controversy."[45] Pointing to a handful of vanilla memorandum excerpts and meeting minutes is just not enough, in these circumstances, to demonstrate that a genuine, extant controversy exists. Without a proxy contest, or even a stockholder saying she is chilled from making a nomination, generic references to stockholder activism contained in committee materials and meeting minutes do not transform this dispute from an "imagined" one to a "real-world" one.[46] As noted in a footnote to the *Kellner II* decision, the adoption of the Universal Proxy Rule prompted many other corporations to revisit their advance notice bylaws.[47] Common sense suggests that, absent any proxy contest threat, the Board's decision to revise Owens Corning's bylaws in response to the Universal Proxy Rule here also is not the kind of

---

[44] *Kellner II*, 320 A.3d at 259.

[45] *Id.* at 258 (quoting *Boilermakers*, 73 A.3d at 949).

[46] *Kellner II*, 320 A.3d at 259 n.139 ("Fiduciary review standards are meant to address 'real-world concerns when they arise in real-world and extant disputes, rather than hypothetical and imagined future ones.'" (quoting *Boilermakers*, 73 A.3d at 963)).

[47] *Kellner II*, 320 A.3d at 258 n.134 (citing Aaron Wendt & Krishna Shah, *2023 Proxy Season Briefing: Key Trends and Data Highlights*, Harvard Law School Forum on Corporate Governance (Aug. 17, 2023), https://corpgov.law.harvard.edu/2023/08/17/2023-proxy-season-briefing-key-trends-and-data-highlight/).

circumstance that the Supreme Court envisioned in *Kellner II* would trigger the machinery of equitable review.[48]

I have little doubt that circumstances exist where an equitable challenge to the adoption of advance notice bylaws can be ripe in the absence of a pending or imminent proxy contest. In this regard, equity is eminently flexible. Here, however, where Plaintiff relies on generic references to activism defense, Plaintiff's interests in seeking immediate equitable review are outweighed by this Court's concern in postponing review until the question arises in some more concrete and final form.

Tackling Plaintiff's hypothetical challenge suggests the adoption of a rule also based in the hypothetical. But crafting such a rule merits "[e]special caution" as it risks an "improvident or premature decision" in an important, complex and evolving area of our law.[49] There is nothing new in this outcome. It aligns not only with *Kellner II* but also *Boilermakers Local 154 Retirement Fund v. Chevron Corp.*, this Court's decision from over a decade prior.[50]

---

[48] *See Siegel*, 2025 WL 1101624, at *7 n.80.

[49] *Bebchuk*, 902 A.2d at 740.

[50] 73 A.3d 934 (Del. Ch. 2013); *see id.* at 954 ("And as with all exercises of fiduciary authority, the real-world application of a forum selection bylaw can be challenged as an inequitable breach of fiduciary duty. But, as a distinguished scholar has noted, '[t]he presumption is not that the [bylaw] is invalid upon adoption because it might, under some undefined and hypothetical set of later-evolving circumstances, be improperly applied.'" (alterations in original) (quoting Joseph A. Grundfest & Kristen A. Savelle, *The Brouhaha over Intra-Corporate Forum Selection Provisions: A Legal, Economic, and Political Analysis*, 68 Bus. Law 325, 331 (providing, in the sentence just after the passage quoted in *Boilermakers*, "In

Finally, Plaintiff attempts to sidestep ripeness by claiming that the Advance Notice Bylaws have "inequitably chill[ed] the fair exercise of the Owens Corning stockholders' franchise,"[51] and analogizing the supposed deterrent effect of the Advance Notice Bylaws to that of stockholder rights plans and dead hand proxy puts.[52] Indeed, the amended complaint makes much of the notion that the Advance Notice Bylaws "include 'Wolfpack' and 'Daisy Chain' provisions substantially similar to the unenforceable entrenchment devices rejected in *Williams*."[53] But, as this Court has explained, an advance notice bylaw is not like a stockholder rights plan or dead hand proxy put.[54] Plaintiff's analogies do not ripen otherwise unripe claims.

---

fact, the intermediate level of scrutiny applied by the courts cannot be brought to bear until the poison pill is actually threatened to be triggered and the court is aware of facts and circumstances surrounding the pill's potential application.'"))); *see also Openwave Sys. Inc. v. Harbinger Cap. P'rs Master Fund I, Ltd.*, 924 A.2d 228, 240 (Del. Ch. 2007) ("Delaware law does not permit challenges to bylaws based on hypothetical abuses . . . .") (first citing *Stroud v. Grace* ("*Stroud II*"), 606 A.2d 75, 96 (Del. 1992); and then citing *Bebchuk*, 902 A.2d at 741); *Stroud II*, 606 A.2d at 79 ("Delaware courts should exercise caution when invalidating corporate acts based upon hypothetical injuries . . . ."). *See generally Siegel*, 2025 WL 1101624, at *3 n.30.

[51] Am. Compl. ¶ 82.

[52] *See, e.g.*, *id.* at 23 n.45 ("Moreover, like a rights plan, an advance bylaw issued preemptively that is never implicated is 'a truly effective deterrent.'" (emphasis omitted)).

[53] Am. Compl. ¶ 11.

[54] *See Siegel*, 2025 WL 1101624, at *7–8.

Considering our Supreme Court's analysis in *Kellner II*, and taking a common sense view of the circumstances as I am instructed to do, I am compelled to conclude Plaintiff's claims here are unripe.

### III.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted without prejudice.  IT IS SO ORDERED.

Sincerely,

*/s/ Nathan A. Cook*

Nathan A. Cook
Vice Chancellor