# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

RYAN CARROLL, on behalf of himself and all similarly situated stockholders of STOKE THERAPEUTICS, INC.,

Plaintiff,

v.

JENNIFER C. BURSTEIN, SETH L. HARRISON, EDWARD M. KAYE, ADRIAN KRAINER, ARTHUR A. LEVIN, GARRY E. MENZEL, JULIE ANNE SMITH, IAN F. SMITH, ARTHUR TZIANABOS, and STOKE THERAPEUTICS, INC.,

Defendants.

C.A. No. 2024-0317-LWW

## MEMORANDUM OPINION

Date Submitted: May 20, 2025
Date Decided: August 25, 2025

Kimberly A. Evans, Irene R. Lax, Daniel M. Baker & Robert Erikson, BLOCK & LEVITON LLP, Wilmington, Delaware; Jason M. Leviton, BLOCK & LEVITON LLP, Boston, Massachusetts; J. Abbott R. Cooper, ABBOTT COOPER PLLC, Stamford, Connecticut; *Attorneys for Plaintiff Ryan Carroll*

Susan M. Waesco, Alexandra M. Cumings, Jacob M. Perrone, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; Felix S. Lee, FENWICK & WEST LLP, Mountain View, California; Marie Bafus, FENWICK & WEST LLP, San Francisco, California; *Attorneys for Defendants Jennifer C. Burstein, Seth L. Harrison, Edward M. Kaye, Adrian Krainer, Arthur A. Levin, Garry E. Menzel, Julie Anne Smith, Ian F. Smith, Arthur Tzianabos, and Stoke Therapeutics, Inc.*

**WILL, Vice Chancellor**

This case is one of many similar challenges to advance notice bylaws pending in the Court of Chancery. The bylaw at issue was adopted on a clear day, and no active proxy contest or attempted nomination is afoot to trigger its enforcement. Instead, the plaintiff claims that the bylaw is generally inconsistent with Delaware law because it impedes the stockholder franchise.

A formidable standard applies when a stockholder contests a bylaw's facial validity. As the Delaware Supreme Court recently confirmed, a bylaw must be upheld if it can lawfully operate in any circumstance. Because scenarios exist where this bylaw can be validly applied, the plaintiff's claim fails.

The defendants' motions to dismiss are granted.

## I. FACTUAL BACKGROUND

The following facts are drawn from the Verified Class Action Complaint, the documents it incorporates by reference, and matters subject to judicial notice.[1]

---

[1] Verified Class Action Compl. (Dkt. 1) ("Compl."); *see Freedman v. Adams*, 2012 WL 1345638, at *5 (Del. Ch. Mar. 30, 2012) ("When a plaintiff expressly refers to and heavily relies upon documents in her complaint, these documents are considered to be incorporated by reference into the complaint[.]" (citation omitted)); *In re Books-A-Million, Inc. S'holders Litig.*, 2016 WL 5874974, at *1 (Del. Ch. Oct. 10, 2016) (explaining that the court may take judicial notice of "facts that are not subject to reasonable dispute" (citing *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 170 (Del. 2006))). Exhibits to the Affidavit of Jacob M. Perrone in Support of Defendants' Opening Brief in Support of Their Motions to Dismiss the Verified Class Action Complaint are cited as "Defs.' Ex. __." Dkt. 20.

## A.    Stoke's Restated Bylaws

Stoke Therapeutics, Inc. is a life sciences company developing RNA-based medicines to address the underlying cause of severe diseases.[2]  It is incorporated in Delaware and headquartered in Massachusetts.[3]

Stoke completed its initial public offering on June 21, 2019.[4]  In anticipation of the IPO, Stoke's Board of Directors adopted Restated Bylaws on May 10, 2019.[5] The Restated Bylaws contained an advance notice provision that outlined timing and notice requirements for stockholders nominating Board candidates (the "Advance Notice Bylaw").[6]  The Advance Notice Bylaw included a definition of "Acting in Concert," which requires a nominating stockholder to disclose certain information about agreements, arrangements, or understandings ("AAU") with other persons.[7]

## B.    Stoke's Amended and Restated Bylaws

In November 2021, the Securities and Exchange Commission adopted rules requiring that proxy cards solicited in a contested election include not only the

---

[2] Compl. ¶ 13.

[3] *Id.*

[4] Defs.' Ex. 1 (Stoke Therapeutics, Inc. Form 10-Q, filed Aug. 14, 2019) 3.

[5] *Id.* at Ex. 3.2 ("Restated Bylaws").  The Restated Bylaws took effect on June 21, 2019.

[6] *Id.* § 1.12.

[7] *Id.* § 1.12.4(c)(A) (defining "Acting in Concert"); *see also id.* § 1.12.4(c)(C) (defining "Associated Person"); *infra* notes 50-52 and accompanying text (discussing these provisions).

company's nominees but also any stockholder's nominees.[8]  Those universal proxy rules also impose heightened notice, filing, and solicitation requirements.[9]

In early 2023, Stoke's Board reviewed the Restated Bylaws.  According to Stoke's public filings, the Board set out to assess the Restated Bylaws considering the universal proxy rules and changes to the Delaware General Corporation Law.[10] Amended and Restated Bylaws, which took effect on February 2, 2023, resulted.[11]

The Advance Notice Bylaw—first in the Restated Bylaws and retained in the Amended and Restated Bylaws—remains in effect.[12]   Since Stoke's IPO, no stockholder has sought to nominate a director candidate.  As such, the Board has never had occasion to consider a nomination under the Advance Notice Bylaw.

## C.    Post-*Kellner I* Litigation

The SEC's universal proxy rules prompted many companies to revisit and bolster their advance notice bylaws.[13]  One corporation's expansive advance notice

---

[8] *See* Press Release, Sec. & Exch. Comm'n, SEC Adopts New Rules for Universal Proxy Cards in Contested Director Elections (Nov. 17, 2021), https://www.sec.gov/newsroom/press-releases/2021-235; *see also* Compl. ¶ 7.

[9] *See* 17 C.F.R. § 240.14a-19 (2021).

[10] Defs.' Ex. 2 (Stoke Therapeutics, Inc. Form 8-K, filed Feb. 3, 2023) (describing the amendment); *id.* at Ex. 3.1 (full text of amended bylaws); *see also* Compl. Ex. 1 (Am. and Restated Bylaws ("A&R Bylaws")).

[11] *See* A&R Bylaws 1.

[12] Defs.' Ex. 4 (Stoke Therapeutics, Inc. Form 10-K, filed Mar. 25, 2024) 3.

[13] *See* Compl. ¶ 1.

3

bylaws prompted litigation in Delaware by a stockholder whose nomination had been rejected.[14] In a January 2024 post-trial decision by this court ("*Kellner I*"), certain of those bylaws were struck down as invalid and unenforceable.[15]

A wave of stockholder litigation and demands followed. About twenty nearly identical complaints contesting advance notice bylaws were filed in the Court of Chancery in the spring of 2024.[16] This lawsuit is one of them.[17] None of those suits concern a live proxy contest or an attempted nomination.

---

[14] *Kellner v. AIM ImmunoTech Inc.*, 307 A.3d 998 (Del. Ch. 2023) ("*Kellner I*").

[15] *Id.*

[16] *See, e.g.*, *Gilbert v. Solventum Corp.*, C.A. No. 2024-0501-JTL (Del. Ch. May 10, 2024); *Schantz v. Bedi*, C.A. No. 2024-0328-MTZ (Del. Ch. Mar. 29, 2024); *Collins v. Dybbs*, C.A. No. 2024-0314-JTL (Del. Ch. Mar. 27, 2024); *Taylor v. Harvey*, C.A. No. 2024-0313-JTL (Del. Ch. Mar. 27, 2024); *Wright v. Farello*, C.A. No. 2024-0306-KSJM (Del. Ch. Mar. 26, 2024); *Taylor v. Clinton*, C.A. No. 2024-0305-MTZ (Del. Ch. Mar. 26, 2024); *O'Connor v. Daimler*, C.A. No. 2024-0307-KSJM (Del. Ch. Mar. 26, 2024); *Smith v. Becker*, C.A. No. 2024-0293-PAF (Del. Ch. Mar. 22, 2024); *Smith v. Gores*, C.A. No. 2024-0285-MTZ (Del. Ch. Mar. 21, 2024); *Jones v. Carere*, C.A. No. 2024-0278-JTL (Del. Ch. Mar. 20, 2024); *Jones v. Begley*, C.A. No. 2024-0273-MTZ (Del. Ch. Mar. 9, 2024); *Miller v. Allen*, C.A. No. 2024-0234-KSJM (Del. Ch. Mar. 11, 2024); *O'Connor v. Blignaut*, C.A. No. 2024-0190-PAF (Del. Ch. Feb. 29, 2024); *Johnson v. Abbosh*, C.A. No. 2024-0191-PAF (Del. Ch. Feb. 29, 2024); *Jones v. Finkelstein*, C.A. No. 2024-0178-JTL (Del. Ch. Feb. 28, 2024); *Matt v. Alvarez*, C.A. No. 2024-0173-MTZ (Del. Ch. Feb. 27, 2024); *Garfield v. Citrino*, C.A. No. 2024-0158-JTL (Del. Ch. Feb. 21, 2024); *Garfield v. Allen*, C.A. No. 2024-0270-KSJM (Del. Ch. Mar. 18, 2024); *Golla v. Short*, C.A. No. 2024-0100-JTL (Del. Ch. Feb. 6, 2024).

[17] *Carroll v. Burstein*, C.A. No. 0317-LWW (Del. Ch. Mar. 27, 2024). The plaintiff's counsel raised that four members of the court have before us "four matters [that] concern nearly identical complaints, motions to dismiss, briefing schedules and briefing, and counsel." Dkt. 26 (discussing *Smith*, C.A. No. 2024-0293-PAF; *Collins*, C.A. No. 2024-0314-JTL; *Carroll*, C.A. No. 2024-0317-LWW; and *Schantz*, C.A. No. 2024-0328-MTZ). Counsel proposed that the court hold "an omnibus hearing, stagger the hearings, or proceed in any other matter the Court prefer[red]." *Id.* The judges hearing these four cases

**D.     This Litigation and *Kellner II***

Plaintiff Ryan Carroll, a Stoke stockholder, filed this putative class action on March 27, 2024.[18]  He advanced two claims against Stoke's Board.  Count I seeks a declaratory judgment that the Advance Notice Bylaw "unlawfully serves as an effective deterrent to stockholders exercising their right to nominate candidates for election to director."[19]  Count II is a breach of fiduciary duty claim, alleging that "[a]pproving, adopting, and allowing to remain in effect an Advance Notice Bylaw that cannot, as a practical matter, be complied with was and is a breach of the Board's duty of loyalty."[20]

In July 2024, the Delaware Supreme Court affirmed *Kellner I* in part and reversed it in part ("*Kellner II*").[21]  The court agreed with *Kellner I* insofar as certain bylaws were inequitable and unenforceable.[22]  But it clarified the standard for challenging the facial validity of a bylaw on a clear day.[23]

---

determined that a staggered approach was appropriate.  *See* Dkt. 29.  This matter is being heard first.  *Id.*

[18] Dkt. 1.

[19] Compl. ¶ 52.

[20] *Id.* ¶ 62.

[21] *Kellner v. AIM ImmunoTech Inc.*, 320 A.3d 239 (Del. 2024) ("*Kellner II*").

[22] *Id.* at 267 (holding that four amended bylaws were "designed to thwart an approaching proxy contest, entrench the incumbents, and remove any possibility of a contested election," and were unreasonably broad (quoting *Kellner I*, 307 A.3d at 1036)).

[23] *Id.* at 263; *see infra* notes 57-58 and accompanying text (discussing the standard).

5

In December, the defendants moved to dismiss this suit.[24] They argued that the plaintiff failed to plead facial validity under *Kellner II* or state a viable breach of fiduciary duty claim. The plaintiff opposed the motions on Count I,[25] and chose not to press Count II.[26] Oral argument on Count I was presented on May 20, after which I took the motions to dismiss under advisement.[27]

## II.  ANALYSIS

The defendants seek dismissal under Court of Chancery Rule 12(b)(6).[28] I must "(1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as 'well pleaded' if they give the opposing party notice of the claim, [and] (3) draw all reasonable inferences in favor of the non-moving party . . . ."[29] I need

---

[24] Defs.' Opening Br. in Supp. of Mots. to Dismiss Compl. (Dkt. 20) ("Defs.' Opening Br.").

[25] *See* Pls.' Answering Br. in Opp'n to Defs.' Mots. to Dismiss Pl.'s Compl. (Dkt. 22) ("Pl.'s Answering Br."); *see also* Defs.' Reply Br. in Supp. of Mots. to Dismiss Compl. (Dkt. 27) ("Defs.' Reply Br."). After briefing was complete, Vice Chancellor Cook issued a decision on ripeness in an "as-applied" advance notice bylaw suit. *Siegel v. Morse*, 2025 WL 1101624 (Del. Ch. Apr. 14, 2025). I invited each party to file a supplemental submission on whether *Siegel* affected their prior arguments. Dkt. 32; *see* Defs.' Suppl. Submission Regarding Mots. to Dismiss (Dkt. 33) ("Defs.' Suppl. Br."); Pl.'s Suppl. Submission in Opp'n to Defs' Mots to Dismiss Compl. (Dkt. 34) ("Pl.'s Suppl. Br.").

[26] *See* Tr. of Oral Arg. on Defs.' Mots. to Dismiss (Dkt. 42) ("Hr'g Tr.") 27-28 (plaintiff's counsel stating they were "not moving forward" on Count II).

[27] *See* Dkt. 39.

[28] Defs.' Opening Br. 11.

[29] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011) (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002)).

6

not, however, "accept every strained interpretation of [the plaintiff's] allegations"[30] or conclusory assertions "unsupported by allegations of specific facts."[31]

I begin by addressing the standard that governs the plaintiff's facial validity challenge. Applying that standard to the Advance Notice Bylaw, I conclude that the plaintiff has failed to plead a reasonably conceivable claim. The motions to dismiss are granted.

## A. The Nature of the Plaintiff's Claim

The plaintiff seeks a declaration that the Advance Notice Bylaw is "invalid, illegal, and void."[32]

He acknowledges that the Advance Notice Bylaw was adopted on a "clear day"—when the Board "was not faced with an imminent threat" of stockholder activism or a proxy contest.[33] The portion of the Advance Notice Bylaw at issue was first adopted in connection with Stoke's 2019 IPO.[34] It was left unchanged in the 2023 Amended and Restated Bylaws.[35]

---

[30] *Gen. Motors (Hughes)*, 897 A.2d at 168 (quoting *Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001)).

[31] *In re Lukens Inc. S'holders Litig.*, 757 A.2d 720, 727 (Del. Ch. 1999), *aff'd sub nom. Walker v. Lukens, Inc.*, 757 A.2d 1278 (Del. 2000).

[32] Compl. ¶ 54.

[33] *Strategic Inv. Opportunities LLC v. Lee Enters., Inc.*, 2022 WL 453607, at *16 (Del. Ch. Feb. 14, 2022).

[34] Defs.' Ex. 1 at 3.

[35] *Compare* Restated Bylaws § 1.12.4(c)(A), *with* A&R Bylaws § 1.12.4(c)(A).

The plaintiff does not question the application of the Advance Notice Bylaw. Nor could he, given that no stockholder has submitted—or is even considering—a director nomination under it. Instead, he maintains that the Advance Notice Bylaw might generally deter Stoke stockholders from making a director nomination.[36]

Thus, there is no cloudy day adoption or enforcement that could trigger enhanced scrutiny.[37] The plaintiff's challenge is a purely facial one.[38]

In *Siegel v. Morse*, Vice Chancellor Cook dismissed an as-applied challenge to an advance notice bylaw as unripe where the plaintiff "disclaimed a facial validity challenge" and did not allege that "a single stockholder [was] deterred by the [a]dvance [n]otice [b]ylaws from nominating a director for election."[39] This case is the opposite. I am being asked to consider a question of law—not to assess facts in equity.

---

[36] *See, e.g.*, Compl. ¶ 38.

[37] *Kellner II*, 320 A.3d at 259-60 (explaining that enhanced scrutiny review applies to a bylaw challenge "[i]f a board adopts, amends or enforces advance notice bylaws during a proxy contest"). In *Kellner*, the advance notice bylaw was adopted amid an anticipated proxy contest. *Kellner I*, 307 A.3d at 1024 ("[T]he Amended Bylaws were not adopted on a clear day. The skies were overcast in March 2023, with storm clouds of a proxy contest gathering on the horizon.").

[38] Compl. ¶ 54.

[39] 2025 WL 1101624, at *6. In *Siegel*, the plaintiff alleged that the board's adoption of an advance notice bylaw was a breach of fiduciary duty because it "inequitably chill[ed] the fair exercise of the . . . stockholders' franchise." *Id.*

The parties agree that the facial validity claim presents a ripe dispute.[40] So do I. The plaintiff alleges that the Advance Notice Bylaw frustrates the stockholder franchise due to an ongoing deterrent effect.[41] Delaware courts treat facial bylaw challenges as ripe in such circumstances.[42]

## B. The Plaintiff's Facial Validity Claim

Having brought a facial validity claim, the plaintiff must meet a formidable standard. In *Kellner II*, the court explained that judicial review of a facial bylaw challenge is limited to three questions: whether the bylaw is "authorized by the Delaware General Corporation Law (DGCL)," "consistent with the corporation's

---

[40] *See* Pl.'s Suppl. Br. 10 (stating that the claim is ripe because the "Advance Notice Bylaw . . . deter[s] any rational stockholder from submitting a nomination," creating a "present, ongoing, and serious harm to a fundamental stockholder right"); Defs.' Suppl. Br. 3 n.4 (arguing that *Siegel* "confirms that Plaintiff's challenge to the Advance Notice Bylaw . . . must be purely a facial validity challenge because an as-applied challenge would not be ripe"); Hr'g Tr. 27 (defense counsel agreeing that the case was ripe for adjudication).

[41] *See* Pl.'s Suppl. Br. 4; Compl. ¶ 64 (alleging that the Advance Notice Bylaw "inequitably chills and potentially even precludes the fair exercise of the stockholder franchise").

[42] *See Boilermakers Loc. 154 Ret. Fund v. Chevron Corp.*, 73 A.3d 934, 952 n.80 (Del. Ch. 2013) (distinguishing between a facial validity challenge, which was ripe, and an "as-applied challenge, which should be addressed when the issue is actually ripe"); *Solak v. Sarowitz*, 153 A.3d 729, 737-738 (Del. Ch. 2016) (treating a facial challenge to a fee-shifting bylaw as ripe despite the absence of any allegation that the bylaw had been invoked; noting that the court "repeatedly has recognized disputes to be ripe for review when stockholders challenge measures that have a substantial deterrent effect"); *Sciabacucchi v. Salzberg*, 2018 WL 6719718, at *24 (Del. Ch. Dec. 19. 2018), *rev'd on other grounds*, 227 A.3d 102 (Del. 2020) (holding that a facial challenge to a federal forum provision was ripe based on its alleged "substantial deterrent effect" (quoting *Solak*, 153 A.3d at 737)).

9

certificate of incorporation," and not "otherwise prohibited" by law.[43]   If the contested bylaw can operate consistent with these requirements in any circumstance, the claim fails.[44]

Here, the plaintiff concedes that the Advance Notice Bylaw is consistent with Stoke's certificate of incorporation.[45]   But he asserts that the bylaw is invalid as contrary to the DGCL and Delaware law more broadly.[46]   Under 8 *Del. C.* § 109(b), a corporation's "bylaws may contain any provision, *not inconsistent with law . . .* relating to the business of the corporation, the conduct of its affairs, and its rights or powers or the rights or powers of its stockholders, directors, officers or employees."[47]

## C.     The Bylaw Challenges

Section 1.12.4(c) of the Amended and Restated Bylaws contains the Advance Notice Bylaw in question.[48]   The plaintiff focuses on the Advance Notice Bylaw's definition of "Acting in Concert."   He alleges that this definition, as incorporated

---

[43] *Kellner II*, 320 A.3d at 258 (quoting *ATP Tour, Inc. v. Deutscher Tennis Bund*, 91 A.3d 554, 557-58 (Del. 2014)); *see also id.* at 262 n.153.

[44] *See infra* note 58 and accompanying text (discussing the standard).

[45] *See* Pl.'s Answering Br. 3 n.11.

[46] *Id.* at 11 ("[A] bylaw that is inconsistent with law does not address proper subject matters of bylaws and is facially invalid.").

[47] 8 *Del. C.* § 109(b) (emphasis added).

[48] Compl. ¶¶ 28, 30.

10

into the definitions of "Associated Person[s]" and "Proposing Person[s]," is problematic.[49]

The Advance Notice Bylaw requires certain disclosures by a "Proposing Person" in a notice of nomination. It defines the "Proposing Person" to include "Associated Person[s]" on whose behalf the nomination is made:

> (1) the Record Stockholder providing the notice of business proposed to be brought before an annual meeting or nomination of persons for election to the Board at a stockholder meeting, (2) the beneficial owner or beneficial owners, if different, on whose behalf the notice of business proposed to be brought before the annual meeting or nomination of persons for election to the Board at a stockholder meeting is made, and (3) any Associated Person [which includes a person Acting in Concert therewith] on whose behalf the notice of . . . nomination of persons for election to the Board at a stockholder meeting is made[.][50]

"Associated Person," in turn, is defined to include any person "Acting in Concert" with the "Associated Person":

> with respect to any subject stockholder or other person (including any proposed nominee) (1) any person directly or indirectly controlling, controlled by or under common control with such stockholder or other person, (2) any beneficial owner of shares of stock of the Corporation owned of record or beneficially by such stockholder or other person, (3) any associate of such stockholder or other person, and (4) any person directly or

---

[49] *Id*. ¶¶ 31-35.

[50] A&R Bylaws § 1.12.4(c)(F); *see also* Restated Bylaws §1.12.4(c)(F).

indirectly controlling, controlled by or under common control or Acting in Concert with any such Associated Person[.][51]

A person "Acting in Concert" is one who:

> knowingly acts (*whether or not pursuant to an express agreement, arrangement or understanding*) in concert with, or toward a common goal *relating to the management, governance or control of the Corporation in substantial parallel* with, such other person where (1) each person is conscious of the other person's conduct or intent and this awareness is an element in their decision-making processes and (2) at least one additional factor suggests that such persons intend to act in concert or in substantial parallel, which such additional factors may include, without limitation, exchanging information (whether publicly or privately), attending meetings, conducting discussions or making or soliciting invitations to act in concert or *in substantial parallel*; provided that a person shall not be deemed to be Acting in Concert with any other person solely as a result of the solicitation or receipt of revocable proxies or consents from such other person in response to a solicitation made pursuant to, and in accordance with, Section 14(a) (or any successor provision) of the Exchange Act by way of a proxy or consent solicitation statement filed on Schedule 14A. *A person Acting in Concert with another person shall be deemed to be Acting in Concert with any third party who is also Acting in Concert with such other person*[.][52]

The plaintiff also takes aim at a "Wolf Pack Provision"—the "in substantial parallel" feature of the Acting in Concert provision, which compels the disclosure of other persons acting towards a common goal.[53] And he contests a "Daisy Chain

---

[51] A&R Bylaws § 1.12.4(c)(C); *see also* Restated Bylaws §1.12.4(c)(C).

[52] A&R Bylaws § 1.12.4(c)(A) (emphasis added); *see also* Restated Bylaws §1.12.4(c)(A).

[53] Compl. ¶ 31; *see also id.* ¶ 5.

Provision"—the final sentence of the Acting in Concert definition, which "provides that stockholders are Acting in Concert with one another by separately and independently Acting in Concert with the same third party."[54]

According to the plaintiff, these definitions leave the Advance Notice Bylaw unable to "operate lawfully."[55] He insists that is so because the Advance Notice Bylaw is (1) "impossible to comply with" and (2) "unintelligible," rendering stockholders' right to nominate illusory.[56] Neither theory presents a reasonably conceivable basis to deem the Advance Notice Bylaw facially invalid.

### 1. Whether the Bylaw Can Operate Lawfully

"Under Delaware law, bylaws are 'presumed to be valid' and must be interpreted 'in a manner consistent with the law.'"[57] To overcome that presumption, a plaintiff must show that a bylaw "cannot operate lawfully under *any* set of circumstances."[58] That high bar is unmet here.

The plaintiff advances two reasons why the Advance Notice Bylaw is unlawful, both based on the common theme that nominating stockholders may be expected to disclose unknown persons. First, he contends that the Acting in Concert

---

[54] Compl. ¶ 31; *see also id.* ¶ 5.

[55] Pl.'s Answering Br. 41; *see also id.* at 18, 39 (quoting *Kellner II*, 320 A.3d at 263).

[56] *Id.* at 11, 18.

[57] *Kellner II*, 320 A.3d at 258 (quoting *Frantz Mfg.*, 501 A.2d at 407 (Del. 1985)).

[58] *Id.* (emphasis added).

13

definition could require nominating stockholders to provide information about persons they do not realize they are acting in concert with.[59] He points to the Wolf Pack and Daisy Chain Provisions as further complicating this requirement.[60] Second, he alleges that the Advance Notice Bylaw applies even with no express AAU between the nominating stockholder and those with whom they act in concert.[61]

The defendants say that these assertions are baseless because the Acting in Concert definition only requires a nominating stockholder to disclose persons it has knowledge of.[62] The Wolf Pack and Daisy Chain Provisions are subsumed within the Acting in Concert definition, which conditions the disclosure obligation on the

---

[59] Compl. ¶¶ 5-6.

[60] The plaintiff alleges that the Wolf Pack Provision "deems stockholders to be Acting in Concert with one another if they act 'in substantial parallel' with each other [,]" even if they are unaware of one another. *Id.* ¶ 5; *see also id.* ¶¶ 29-30, 34. He also asserts that the Daisy Chain Provision "deems two stockholders working with the same third party to be Acting in Concert regardless of whether the two stockholders know about each other's existence." *Id.* ¶ 5; *see also id.* ¶¶ 29, 32.

[61] *Id.* ¶¶ 4, 29, 34.

[62] *See* Defs.' Opening Br. 9; Defs.' Reply Br. 17; *see also* A&R Bylaws § 1.12.4(c)(A) ("[A] person shall be deemed to be 'Acting in Concert' with another person if such person *knowingly* acts (whether or not pursuant to an express agreement, arrangement or understanding) in concert with, or toward a common goal relating to the management, governance or control of the Corporation in substantial parallel with, such other person where (1) each person is *conscious* of the other person's conduct or intent and this *awareness* is an element in their decision-making processes and (2) at least one additional factor suggests that such persons *intend* to act in concert or in substantial parallel . . . ." (emphasis added)).

14

nominating stockholder's knowledge of persons with whom it is acting in concert.[63] The Advance Notice Bylaw also clarifies that a written description of an AAU would include "any knowledge that another person or entity is Acting in Concert (as defined in Section 1.12.4(c))."[64]

I need not analyze that textual argument, however. The plaintiff's claim fails for a simpler reason: a nominating stockholder can adhere to the Advance Notice Bylaw in some cases. Take a lone stockholder, for instance. If she told no one about her plan to nominate a director, she could easily comply with the bylaw, as she would have nothing to disclose.[65] Or, consider a stockholder who openly coordinates with a single other person to nominate a director. The two may be acting in concert, but they have no interactions with anyone else relating to Stoke. The nominating stockholder could simply disclose the person with whom he was coordinating.

The plaintiff responds by citing imagined fact patterns where the AAU disclosure requirement, coupled with the Acting in Concert definition, might leave a nominating stockholder unable to confirm that it identified all relevant persons.[66]

---

[63] A&R Bylaws § 1.12.4(c)(A).

[64] *Id.* § 1.12(e)(xi).

[65] At oral argument, the plaintiff's counsel argued that this was an unrealistic scenario. *See* Hr'g Tr. 52-53. This argument might carry weight in an as-applied challenge. But under the narrow facial validity standard articulated in *Kellner II*, it cannot. The plaintiff must show that the bylaw cannot lawfully operate in any circumstance to overcome the presumption of validity, regardless of the likelihood that it will occur.

[66] Compl. ¶ 36.

Perhaps. But in *Kellner II*, the Delaware Supreme Court explained that a plaintiff cannot overcome a bylaw's presumed legality with "hypotheticals or speculat[ion] whether the bylaw might be invalid under certain circumstances."[67] That precedent counsels that the plaintiff's claim is vitiated by the mere existence of a situation where the Advance Notice Bylaw lawfully operates.

### 2. Whether the Bylaw Is "Unintelligible"

The plaintiff's other facial invalidity argument fares no better. He asserts in his answering brief that the Advance Notice Bylaw must be struck down as "unintelligible."[68] This unpleaded theory is meritless.[69]

In *Kellner I*, this court held that an ownership provision of an advance notice bylaw was invalid, reasoning that it was "indecipherable."[70] The bylaw at issue consisted of a 1,099-word run-on sentence with 13 subsections.[71] "Any justifiable objectives that might be served by aspects of the [bylaw] [we]re buried under dozens of dense layers of text," such that a stockholder could not be expected to understand

---

[67] *Kellner II*, 320 A.3d at 263.

[68] Pl.'s Answering Br. 11.

[69] *See Orman v. Cullman*, 794 A.2d 5, 28 n.59 (Del. Ch. 2002) ("Briefs relating to a motion to dismiss are not part of the record and any attempt contained within such documents to plead new facts or expand those contained in the complaint will not be considered.").

[70] *Kellner I*, 307 A.3d at 1034.

[71] *Id*.

the bylaw—much less comply with it.[72]   The Delaware Supreme Court agreed,

holding that the ownership provision was "unintelligible."[73]   It explained that the

bylaw was "excessively long, contain[ed] vague terms, and impose[d] virtually

endless requirements on a stockholder seeking to nominate directors."[74]

The plaintiff contends that this holding in *Kellner II* created a "new standard

by which a bylaw may be deemed facially invalid."[75]  Not so.  Consistent with prior

precedent, the court confirmed that a plaintiff raising a facial validity challenge must

"demonstrate that the bylaw cannot operate lawfully under any set of

circumstances."[76]

In *Kellner II*, the ownership provision could never lawfully operate; it was

impossible to understand in "any circumstance[]."[77]  The Advance Notice Bylaw

---

[72] *Id.* at 1035.  Notably, a member of the company's board also testified that "the bylaw was written in such a way that 'no one would read it.'"  *Id.* at 1034.

[73] *Kellner II*, 320 A.3d at 263.  There is no distinction between an "indecipherable" bylaw and an "unintelligible" bylaw.  The words are synonyms and both describe something that cannot be understood or deciphered.  *Compare Indecipherable*, Merriam-Webster, www.merriam-webster.com/dictionary/indecipherable (last visited Aug. 20, 2025) (defining "indecipherable" as "incapable of being deciphered"), *with Unintelligible*, Merriam-Webster, https://www.merriam-webster.com/dictionary/unintelligible (last visited Aug. 20, 2025) (defining "unintelligible" as "unable to be understood or comprehended").

[74] *Kellner II*, 320 A.3d at 263.

[75] Pl.'s Answering Br. 4.

[76] *Kellner II*, 320 A.3d at 258 (citing *ATP Tour*, 91 A.3d at 557-58 and *Salzberg*, 227 A.3d at 113).

[77] *Id.* at 263.

here, by contrast, can properly function in at least some instances.[78] Although the Acting in Concert definition is broad and dense—even muddled—one can parse through it and understand its purpose.[79] It is nothing like the monstrous ownership provision in *Kellner*, which was over five times longer and far more impenetrable. In fact, the Delaware Supreme Court in *Kellner II* had "no trouble concluding that" similar AAU and "daisy chain" provisions were "valid" despite being confusing and difficult to comply with.[80]

Consequently, even if it were fairly raised, the plaintiff's argument that the Advance Notice Bylaw is invalid as unintelligible fails.[81]

## III. CONCLUSION

The plaintiff has failed to state a reasonably conceivable claim for facial invalidity of the Advance Notice Bylaw. The Complaint is dismissed with prejudice under Rule 12(b)(6).

---

[78] *See supra* Section II.C.1.

[79] *Cf. Kellner I*, 307 A.2d at 1027 (explaining that bylaws that are "lengthy, dense, and require meaningful effort to satisfy" are not necessarily "preclusive").

[80] *Kellner II*, 320 A.3d at 263. The court affirmed that the provisions were unenforceable in the context of an as-applied challenge. *Id.* at 245-46.

[81] By holding upholding the Advance Notice Bylaw, I am not deeming it a best practice. Good corporate governance counsels in favor of clear and straightforward bylaws. And careful drafting balances the board's need for orderly nominations with stockholders' fundamental right to exercise the franchise, while minimizing litigation risk. The plaintiff rightly points out several suboptimal portions of this Advance Notice Bylaw. Being suboptimal does not, however, mean it is invalid.